765 F.2d 146
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE,
v.
JOHN ERWIN BECK (84-5545); DALE KERRY MADSEN (84-5546),
DEFENDANTS-APPELLANTS.
 NO. 84-5545
 United States Court of Appeals, Sixth Circuit.
 5/23/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY
 BEFORE: KENNEDY, and MILBURN, Circuit Judges; and GUY, District Judge.*
 PER CURIAM.
 
 
 1
 Defendants appeal their jury convictions for possession with intent to distribute marijuana and cocaine in violation of 21 U.S.C. Sec. 841(a).
 
 I.
 
 2
 On February 2, 1984, Kentucky police officers stopped defendants' rented motor home in Cave City, Kentucky, pursuant to a 'BOLO' (Be on the Lookout) radio message dispatched by the Glasgow, Kentucky, Police Department. Information obtained from two women who had previously been passengers in the motor home from Minnesota to Elizabethtown, Kentucky, was the source of the BOLO. After the defendants abandoned the two women in Elizabethtown, the women notified the local police, informed them that the defendants possessed cocaine and a large sum of money, described the motor vehicle and the defendants, and provided the license number of the vehicle.
 
 
 3
 At the scene of the stop, Kentucky State Trooper Ron West asked the defendants if they would consent to a search of the vehicle. Although defendants insist that defendant Beck told the trooper he could not search the vehicle, the trial court found that Beck gave no such direct order. In response to defendant Madsen's question as to what would happen if the defendants refused to consent, the trooper responded that he would seek other means. Madsen then signed a form giving consent to the search which produced a quantity of marijuana and over Eighty Thousand ($80,000.00) Dollars in cash. The defendants were charged with possession of marijuana, taken to jail and the vehicle was impounded. Thereafter, Trooper West obtained a search warrant from the Barren County District Judge and a subsequent search of the motor home uncovered two ounces of cocaine.
 
 
 4
 Pursuant to the defendants' motions, two suppression hearings were conducted following which the trial court held that Madsen's consent was valid, and that although the affidavit supporting the search warrant contained errors, under the totality of circumstances, the motions to suppress would be denied. The defendants were thereafter tried and convicted by a jury.
 
 II.
 A. The Stop
 
 5
 The defendants concede that the BOLO was sufficient to support a stop under Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968), but argue that the actions of the police went beyond a mere investigatory stop, therefore requiring that the detention (or arrest as the defendants would have it) be supported by probable cause. See Michigan v. Summers, 452 U.S. 692, 700, 101 S. Ct. 2587, 2593 (1981) (every arrest and seizure having the essential attributes of a formal arrest is unreasonable unless supported by probable cause). The defendants contend that the actions of the police in ordering them out of the vehicle with a bullhorn and holding them at gunpoint constituted a formal arrest. We disagree.
 
 
 6
 First, the Supreme Court has held that an officer's order, following a lawful stop, that the occupant get out of an automobile, does not convert the stop into an impermissible seizure. Pennsylvania v. Mimms, 434 U.S. 106, 98 S. Ct. 330 (1977). Second, an officer's display of a weapon similarly does not convert an investigatory stop into an arrest. See, e.g., United States v. Roper, 702 F.2d 984 (11th Cir. 1983) and cases cited therein at 987-88. Stops of this type are justified because the officers' interest in avoiding 'unnecessary risks in the performance of their duties,' Terry, supra, 392 U.S. at 23, 88 S. Ct. at 1881, outweighs the intrusion into the occupants' personal liberty. Mimms, supra, 434 U.S. at 111, 98 S. Ct. at 333.
 
 
 7
 In this connection, we note that the testimony showed that only one weapon was displayed, that at no time did the officer point his weapon at either defendant, and that within a few minutes of the stop, after it became apparent that the officers were in no danger, the weapon was returned to the trunk of the police car. We hold that the police officers' actions were reasonable under the circumstances and did not transform the stop into an arrest.
 
 B. Consent To Search
 
 8
 The defendants first argue that Madsen lacked the authority to consent to the initial search of the motor home in the presence of Beck, who had a superior proprietary interest in the vehicle. As an initial matter, we hold that the trial court's factual finding that defendant Beck never gave a direct order not to search the motor home is not clearly erroneous. Therefore, we need not consider defendants' reliance on those cases holding that when two parties are present and each gives a conflicting response to a request to search, the officers must make a determination, from the facts, that the party giving consent has authority to do so.
 
 
 9
 The defendants contend that Beck's consent was necessary because he had the only real proprietary claim in the motor home. However, in United States v. Matlock, 415 U.S. 164, 94 S. Ct. 988 (1974), the Supreme Court enunciated the appropriate factors to be considered in determining whether the consent of a third party is valid:
 
 
 10
 Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.
 
 
 11
 Id. at 171 n.7, 94 S. Ct. at 993 n.7 (citations omitted).
 
 
 12
 That the defendants had mutual use of the motor home cannot seriously be disputed. The defendants' own version of the trip is that the two were engaged in a joint venture; therefore, Madsen was more than a mere passenger. To paraphrase Matlock, we think it reasonable that either of these 'co-inhabitants' had the right to consent to the search in his own right and that by entering into the joint venture, Beck had assumed the risk that Madsen might permit the motor home to be searched.
 
 
 13
 Defendants next contend that under Matlock, consent by one party is only valid against the other if the nonconsenting party is absent. However, this court has held that 'Matlock did not depend on the defendant's absence for the defendant there had just been arrested in the front yard of the residence when the third person's consent to search was procured.' United States v. Sumlin, 567 F.2d 684, 687 (6th Cir. 1977), cert. denied, 435 U.S. 932, 98 S. Ct. 1507 (1978).
 
 
 14
 We also reject the defendants' argument that because a passenger in a motor vehicle has 'no standing' per se to object to a search of the vehicle, Rakas v. Illinois, 439 U.S. 128, 99 S. Ct. 421 (1978), conversely, such a passenger does not have the authority to consent to a search. First we note that, as we have already observed, Madsen was more than a mere passenger. Second, and more importantly, defendants have misinterpreted Rakas. The teaching in Rakas is that there is no useful analytical purpose in considering standing as a matter distinct from the merits of a defendant's fourth amendment claim. Therefore, there is no reason to discuss whether Madsen has standing to object to the search; the issue is rather 'the extent of [this] particular defendant's rights under the Fourth Amendment, . . .' 439 U.S. at 139, 99 S. Ct. at 428. This inquiry focuses on a defendant's legitimate expectation of privacy in the invaded place. In contrast, the question of the authority to consent to a search is a distinct inquiry which focuses on the mutual use of the property by persons having joint access or control. Matlock, supra, 415 U.S. at 171 n.7, 94 S. Ct. at 993 n.7.
 
 
 15
 Defendants next maintain that, in any event, Madsen's consent was 'subtly coerced' by the officers. The standards governing this claim were stated in United States v. McCaleb, 552 F.2d 717, 720-21 (6th Cir. 1977):
 
 
 16
 'When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given.' Schneckloth v. Bustamonte, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973) citing Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797. The question of voluntariness of a consent is 'a question of fact to be determined from the totality of all the circumstances,' Schneckloth v. Bustamonte, supra, 412 U.S. at 227, 93 S.Ct. at 2048, and as such requires this court to hold the district judge's finding of voluntary consent to be clearly erroneous before it can be overruled. United States v. Hearn, 496 F.2d 236, 242 (6th Cir.), cert. denied, 419 U.S. 1048, 95 S.Ct. 622, 42 L.Ed.2d 642 (1974).
 
 
 17
 The defendants argue that the circumstances presented herein are no different from those in McCaleb 'where Madsen, surrounded by nine uniformed officers, was informed that either he consents and the search proceeds at once, or the officers obtain a search warrant and the search is conducted later.' Appellants' Brief at 24.
 
 
 18
 Initially, we note that our finding that defendant's consent in McCaleb was involuntary was based on more than the statement by the Drug Enforcement Agent that the defendant either consent or remain in detention and the presence of three agents. We cited the following additional factors: (1) an unconstitutional stop, (2) an unconstitutional arrest, and (3) the fact that no oral acquiescence or written consent was given by the defendant. 552 F.2d at 721. None of these factors is present in the instant case.
 
 
 19
 Moreover, even if we accept defendants' version of the incident; viz., that in response to defendant Madsen's inquiry as to what would happen if they refused to consent, Trooper West replied that he would obtain a search warrant (a fact the government strenuously denies), such would not constitute coercion. First, in McCaleb, as well as in United States v. Jefferson, 650 F.2d 854 (6th Cir. 1981), there was no indication that the same Drug Enforcement Agent involved in both cases, who informed the respective defendants that they would be detained while he secured a search warrant if they refused to consent, did so in response to a question. The fact that Trooper West's statement was made in response to a question tends to undercut any assertion of coercion and reinforces a finding of reasonableness. Furthermore, as will be demonstrated infra, we believe Trooper West possessed probable cause to search the motor home; therefore, his purported statement that he could obtain a search warrant cannot be construed as a misrepre-sentation of the facts. See United States v. Savage, 459 F.2d 60 (5th Cir. 1972) (per curiam), vacated and reaff'd, 483 F.2d 67 (5th Cir. 1973) (per curiam), cert. denied, 415 U.S. 949, 94 S.Ct. 1470 (1974), wherein the Fifth Circuit rejected the same arguments asserted herein. Additionally, we note that neither defendant testified that Trooper West advised the defendants that they would be detained while the search warrant was obtained. Compare McCaleb, supra, 552 F.2d at 719, 721.
 
 
 20
 Finally, we do not believe the presence of the officers compels a finding that Madsen's consent was involuntary. See Savage, supra, 459 F.2d at 61. In sum, we hold that the district court's finding that Madsen's consent was constitutionally valid considering all the circumstances was not clearly erroneous.
 
 
 21
 In addition to our holding that the initial search of the motor home was valid pursuant to Madsen's consent, we believe the police officers possessed ample probable cause to search the vehicle pursuant to the automobile exception to the warrant requirement of the Fourth Amendment. See Chambers v. Maroney, 399 U.S. 42, 90 S. Ct. 1975 (1970). The two former passengers in defendants' motor home, Denise Pechler and Diane Stahl, provided the officers with the following information: (1) a description of the vehicle, (2) its license plate number, (3) the direction the vehicle would be traveling, (4) the names and descriptions of the occupants, and (5) that the vehicle would contain cocaine and a large sum of money. 'The probable cause requirement of the Fourth Amendment is satisfied if the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched.' United States v. Besase, 521 F.2d 1306, 1307 (6th Cir. 1975) (citations omitted).
 
 
 22
 If credible, the information provided by Pechler and Stahl was an adequate basis upon which the officers could believe that an offense had been committed (possession of cocaine) and that evidence thereof would be found in the motor home. As to the reasonableness of the officers' reliance on the statements provided by the women, we first note that because Stahl and Pechler were participants in a crime as well as eyewitnesses to it, their statements were against their penal interests and could be presumed credible. See, e.g., United States v. Chafin, 622 F.2d 927, 930 (6th Cir.), cert. denied, 449 U.S. 984, 101 S. Ct. 401 (1980). Furthermore, with every other piece of the information verified (the description and license number of the vehicle, the direction the vehicle would be traveling, and the names and descriptions of the defendants), the officers had reasonable grounds to believe that the remaining unverified information--that cocaine would be found in the motor home--was likewise true. See Draper v. United States, 358 U.S. 307, 313, 79 S. Ct. 329, 333 (1959) (finding 'reasonable grounds' for officer's belief in information's tip which provided probable cause for warrantless arrest).
 
 C. The Second Search
 
 23
 It is unnecessary to discuss defendants' argument that the second search was tainted by the initial search as we have found that search to be constitutionally valid. Defendants' next argument as to the second search is that because the affidavit underlying the search warrant contained false testimony, the evidence seized should be suppressed. The district court found the affidavit erroneous because, although it stated that the information had been received by Trooper West from Diane Stahl, in fact the affidavit had been executed before West had personally interviewed either Stahl or Denise Pechler. Nonetheless, the court held that under the 'totality of circumstances,' Illinois v. Gates, ---- U.S. ----, 103 S. Ct. 2317 (1983), the motion to suppress would be denied.
 
 
 24
 The defendants argue that Trooper West, and presumably the issuing county judge as well, had no idea of the source of the information. This argument is patently without merit as the affidavit correctly stated that Stahl was the source of the tip.
 
 
 25
 The defendants' allegation that the affidavit contained false information, i.e., that West personally received the information from Stahl, is more difficult. However, we do not believe this technical defect requires suppression of the evidence. First, the affidavit was sufficient under the totality of the circumstances, even without the information as to the source of the tip. See Illinois v. Gates, supra, 103 S. Ct. at 2334-35 (magistrate issuing search warrant justified in relying on anonymous letter which had been corroborated in major part).
 
 
 26
 Second, it is important to focus on the precise untruth contained in the affidavit. The important aspect of the reference to Stahl was that she was the source of the information. We do not believe the misstatement that West received the information personally from Stahl is of constitutional significance. The issuing judge would have been justified in issuing the warrant even if West had correctly informed him that Stahl's information was relayed through other police officers. '[P]robable cause can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest.' United States v. McManus, 560 F.2d 747, 750 (6th Cir. 1977), cert. denied, 434 U.S. 1047, 98 S. Ct. 894 (1978). This holding is equally applicable to a search warrant. Therefore, it cannot be said that the issuing judge 'was misled by information in an affidavit that the affiant knew was false . . .' United States v. Leon, ---- U.S. ----, 104 S. Ct. 3405, 3421 (1984). Accordingly, even if the affidavit is deemed to be technically deficient, such does not bar the admission of the evidence seized in reasonable, good faith reliance on the search warrant. See Leon, supra, 104 S. Ct. at 3412.
 
 
 27
 Finally, we note that the second search could have been conducted even without a search warrant pursuant to the automobile exception. See supra pt. B. The right to search an automobile stopped on the highway with probable cause to search does not vanish when the car is impounded. Florida v. Myers, ---- U.S. ----, 104 S. Ct. 1852 (1984) (per curiam).
 
 D. Sufficiency of the Evidence
 
 28
 The defendants argue that the evidence established no more than a choice of reasonable probabilities and as such the convictions must be reversed. See United States v. Saunders, 325 F.2d 840, 843 (6th Cir. 1964), cert. denied, 379 U.S. 978, 85 S. Ct. 677 (1965). The defendants contend that their version of the purpose of the trip, that is, to purchase automobiles, presents an innocent explanation for the large amount of cash seized. The drugs are said to be for personal use, and the defendants point out that Stahl and Pechler testified the drugs they used with the defendants were given to them freely. The defendants thus contend that the evidence cannot support their convictions for possession with the intent to distribute marijuana and cocaine.
 
 
 29
 In evaluating a claim that the evidence is insufficient to support a conviction, the court must weigh the evidence in the light most favorable to the prosecution and determine whether a reasonable mind might fairly find guilt beyond a reasonable doubt. United States v. Gibson, 675 F.2d 825, 829 (6th Cir. 1982), cert. denied, 459 U.S. 972, 103 S. Ct. 305, 74 L.Ed.2d 285 (1982). The evidence to be considered may include circumstantial proof and reasonable inferences drawn from the evidence. United States v. Flaherty, 668 F.2d 566, 579 (1st Cir. 1981).
 
 
 30
 United States v. McCullah, 745 F.2d 350, 354 (6th Cir. 1984).
 
 
 31
 Under the above-cited standard, defendants' claim that there was no evidence of intent to distribute must fail. First, no sale need be shown to obtain a conviction under 21 U.S.C. Sec. 841. See 21 U.S.C. Sec. 802(11) ('distribute' means 'to deliver' a controlled substance); United States v. Giles, 536 F.2d 136, 141 (6th Cir. 1976). There is direct evidence that the defendants delivered cocaine and marijuana to Pechler and Stahl. Furthermore, the quantity and packaging of the drugs, along with the large amount of cash, provided additional circumstantial evidence of the defendants' intent to distribute the drugs. In short, the evidence presented more than a choice 'between 'reasonable probabilities' of equal weight.' United States v. Campion, 560 F.2d 751, 753-54 (6th Cir. 1977).
 
 E. Prosecutorial Misconduct
 
 32
 The defendants' final argument is that the prosecutor's reference to the defendants as 'drug dealers' during closing argument constituted prosecutorial misconduct for which defendants are entitled to a new trial. Suffice it to say that our review of the record convinces us that while the prosecutor's comments were perhaps ill-advised, such were not 'so pronounced and persistent that [they] permeate[d] the entire atmosphere of the trial.' United States v. Thomas, 728 F.2d 313, 320 (6th Cir. 1984) (citations omitted).
 
 III.
 
 33
 For the reasons hereinbefore stated, the decision of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Ralph B. Guy, Jr., Judge, United States District Court for the Eastern District of Michigan, sitting by designation