OPINION *Page 2 
{¶ 1} Madison Township Police Detective Don Skinner contacted Pickerington Police Detective John Walsh, and informed him of an ongoing investigation involving appellant, Keith Proffit, based upon information received from Hamilton County Sheriff's Detective Richard Sweeney. Detective Sweeney had posed as a young girl in an internet chat room wherein appellant sent images of child pornography and discussed his fantasy of having sexual relations with children.
 {¶ 2} On June 14, 2005, Detective Walsh obtained a search warrant to search the residence of Harold and Michelle Humphrey, appellant's parents. Appellant was residing with his parents as he was a seventeen year old juvenile. The next day, the warrant was executed. Officers seized various items, including computers and computer related items. After the search, appellant was arrested and transported to the Pickerington Police Station.
 {¶ 3} Following juvenile and bind-over proceedings, on January 27, 2006, the Fairfield County Grand Jury indicted appellant on one count of rape in violation of R.C. 2907.02, and twenty-nine counts relating to pandering sexually oriented matter involving a minor, illegal use of minor in nudity/oriented material or performance, dissemination matter harmful to juveniles, and pandering obscenity involving a minor in violation of R.C. 2907.322, 2907.323, 2907.31, and 2907.321, respectively.
 {¶ 4} On March 10, 2006, appellant filed a motion to suppress his statements made to law enforcement officers as they were obtained pursuant to an unlawful custodial interrogation and unlawful arrest. On March 20, 2006, appellant filed another motion to suppress, claiming lack of probable cause to issue the search warrant. A *Page 3 
hearing was held on April 20, 2006. By journal entries filed November 22, 2006, the trial court denied the motions. On April 5, 2007, appellant pled no contest to one count of rape in violation of R.C. 2907.02(A)(1)(b) and two counts of pandering sexually oriented matter involving a minor in violation of R.C. 2907.322(A)(1) and (2). By judgment entry of sentence filed May 1, 2007, the trial court found appellant guilty and sentenced him to an aggregate term of seventeen years in prison, four years suspended in lieu of community control.
 {¶ 5} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 6} "THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED PURSUANT TO A SEARCH WARRANT."
 II {¶ 7} "THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION TO SUPPRESS STATEMENTS TO LAW ENFORCEMENT."
 I, II {¶ 8} Appellant claims the trial court erred in denying his motions to suppress. Specifically, appellant challenges the search warrant and statements he made to law enforcement officers. We disagree with appellant's arguments.
 {¶ 9} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said *Page 4 
findings of fact are against the manifest weight of the evidence.State v. Fanning (1982), 1 Ohio St.3d 19; State v. Klein (1991),73 Ohio App.3d 485; State v. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v.Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93;State v. Claytor (1993), 85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657,1663," . . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 SEARCH WARRANT {¶ 1O} Appellant argues the trial court erred in determining there was probable cause to issue the search warrant after reviewing the four corners of the warrant and accompanying affidavit. We note in appellant's memoranda in support of his motion and during the suppression hearing, it was stipulated that as to probable cause to issue the warrant, the trial court would review the four corners of the search warrant itself and the affidavit. T. at 8-10. *Page 5 
 {¶ 11} Appellant's challenge to the search warrant was predicated on three points: the affidavit's failure to provide any verification that the subject photographs were of real children versus virtual children, staleness, and place to be searched.
 {¶ 12} In support of his argument regarding real versus virtual children, appellant cites the case of Ashcroft v. Free SpeechCoalition (2002), 535 U.S. 234, wherein the United States Supreme Court held portions of the Child Pornography Prevention Act of 1996 were unconstitutional because of provisions banning a wide range of sexually explicit images including "virtual child pornography." Appellant argues the four corners of the affidavit sub judice failed to establish that the images in question depicted real children.
 {¶ 13} In State v. Eichorn, Morrow App. No. 02CA953, 2003-Ohio-3415, this court conducted a thorough analysis of the Ashcroft decision, and concluded the following at ¶ 23-25:
 {¶ 14} "We begin our analysis with the basic premise that acts of the General Assembly enjoy a strong presumption of constitutionality.State v. Gill (1992), 63 Ohio St.3d 53, 55, 584 N.E.2d 1200. Having reviewed the statutes at issue, in the case sub judice, and theAshcroft decision, we conclude said statutes are not overbroad and therefore, do not violate the First Amendment. Therefore, defense counsel was not ineffective for failing to raise this issue at the trial court level.
 {¶ 15} "The main distinction between the CPPA and the statutes under consideration is that the CPPA sought to prohibit virtual child pornography, that is, materials that appear to depict minors but were produced by means other than using real children. The statutes appellant challenges only prohibit materials produced by the *Page 6 
use of real children and permit the trier of fact to infer that the person depicted in the material is in fact a minor if through the material's title, text, visual representation, or otherwise, the material represents or depicts the person as a minor. The state laws appellant challenges do not prohibit virtual child pornography, only pornography produced by the use of real children.
 {¶ 16} "Accordingly, because the statutes under consideration do not seek to prohibit virtual child pornography, we find the statutes are not overbroad."
 {¶ 17} In his affidavit attached to the search warrant, Detective Walsh stated he had personally reviewed the electronic images transmitted between appellant and Detective Sweeney. Detective Walsh advised the photographs were of minor children. The trial court concluded Detective Walsh's belief that the images he viewed were of real children was sufficient in the probable cause sense to overcome any issues raised by Ashcroft. We concur with this reasoning.
 {¶ 18} Next, appellant argues from the affidavit, it was impossible to determine where the images came from and when they were transmitted. The trial court found the affidavit's specific language, appellant "has been maintaining" a relationship with Detective Sweeney who has been posing as a thirteen year old girl on the internet, was sufficient to establish appellant's "actions were current and ongoing." The trial court also relied on the statement that Detective Skinner and Detective Walsh had met some six days prior to the issuance of the warrant.
 {¶ 19} Apart from any evidence submitted during the hearing, the issue is whether the use of the verb "has been maintaining" is sufficient to overcome any claim of staleness of the warrant. *Page 7 
 {¶ 20} Although specific references to dates and times are best, there is no hard and fast rule as to the staleness issue. In State v.Latham (2001), Coshocton App. No. 01-CA-1, we found "ongoing criminal activity" was sufficient to overcome the issue of staleness:
 {¶ 21} "We do not find that the lapse of one week is substantial. The standard for determining whether probable cause to believe evidence exists in a particular location is `whether, given all the circumstances set forth in the affidavit * * * there is a fair probability that contraband or evidence will be found in a particular place.' Illinoisv. Gates (1983), 462 U.S. 213,238, 103 S.Ct. 2317, 76 L.Ed.2d 527. Here, the affidavit was based on ongoing criminal activity."
 {¶ 22} A reading of the affidavit in toto leads one to the conclusion that appellant's actions were ongoing, and the investigatory contacts were current and related back to appellant's actions under investigation. Although the use of vague language is not favored, we find from the totality of the evidence presented in the affidavit that the issuance of the search warrant was not based upon stale information.
 {¶ 23} Lastly, appellant argues the affidavit failed to establish that evidence of a crime would be found at his residence. It is undisputed the affidavit identified the person (appellant), and the residence to be searched. The affidavit supports the place to be searched via Detective Walsh's verification of appellant living at his parents' residence. Detective Walsh matched a photograph that appellant had electronically transferred to Detective Sweeney with his photograph from the Bureau of Motor Vehicles. The license bureau listed appellant's address, and a vehicle parked at the address was registered to Harold Humphrey. Real estate records established Harold *Page 8 
Humphrey owned the subject premises, and Detective Skinner identified Michelle Humphrey as appellant's mother. It does not require a quantum leap to conclude if appellant is sending and receiving pornographic images via a computer, it would be done on his home computer.
 {¶ 24} Upon review, we find sufficient averments in the search warrant's affidavit to establish probable cause for the search of the subject residence.
 STATEMENTS TO LAW ENFORCEMENT OFFICERS {¶ 25} Appellant argues his statements were involuntary and a product of coercion, threats, and promises.
 {¶ 26} There are two areas of interest. First, appellant was notMirandized nor questioned until he was arrested, transported to the police station, and placed in an interrogation room. T. at 34. During the initial execution of the search warrant, appellant stated he was ashamed of what he had been doing and would cooperate. T. at 30. Detective Walsh replied, "We're not going to speak about any of that stuff right now. We're here to deal with the search warrant. We can talk about anything you want to talk about later." T. at 30. Although appellant was kept in an officer's presence during the search and was asked to identify if certain rooms or items were his, there was no questioning. T. at 32. Appellant was permitted to call off work, but was not permitted to call his mother during the course of the search. T. at 247-248.
 {¶ 27} In Ornelas, supra, at 1663, the United States Supreme Court stated, "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Page 9 
 {¶ 28} In its journal entry filed November 22, 2006, the trial court entered specific findings of fact. From our review, we find these findings are supported by the record. Appellant was not questioned until he was Mirandized at the police station. A video of this interview was played for the trial court, and the trial court found no promises were made to appellant. Appellant was released that night after questioning, and the trial court found the atmosphere to be non-coercive:
 {¶ 29} "After performing the search and loading the items in the vehicle the Defendant was placed under arrest and told that his Miranda rights would be explained at the Pickerington Police Department.
 {¶ 30} "There is no evidence of any questions being asked of the Defendant or statements made by the Defendant while the brief transport from the Defendant's home to the Pickerington Police Department took place.
 {¶ 31} "The law enforcement officers left the Defendant's home with the Defendant at approximately 4:00 p.m.
 {¶ 32} "The Defendant's interview at the police station started at 4:25 p.m. and ended at 5:35 p.m. according to the times on the video tape.
 {¶ 33} "* * *
 {¶ 34} "The testimony of Detective Walsh and the video tape of the Defendant's interrogation indicate that the Detective informed the Defendant of his Miranda rights twice, the first time before the interview started and the second time in the middle of the interview. Both times the Defendant indicated he understood his rights and waived those rights. The video tape shows the Defendant choosing the `Waived Rights' box on the Miranda rights form and marked the form himself. The verbal reading and the rights *Page 10 
form communicated to the Defendant that no promises were made to the Defendant in exchange for his statement.
 {¶ 35} "The video of the interview shows that the Detective provided the Defendant with water and asked him several times if he needed anything.
 {¶ 36} "* * *
 {¶ 37} "Testimony was elicited that showed that the Defendant was to turn age 18 in one month, he had prior experience with the police in a domestic violence matter, he had a higher than average intelligence, he was given water, he had an opportunity to take a break, and his interview lasted approximately seventy (70) minutes.
 {¶ 38} "The video of the interview showed that the Defendant was not excessively nervous or emotional. The video also showed that the Detective treated the Defendant politely and with patience. The Defendant was not mistreated. There is no evidence of police coercion or overreaching."
 {¶ 39} The trial court concluded:
 {¶ 40} "There is no evidence of coercive action by law enforcement that caused the Defendant to make a statement that was not knowing, voluntary, and intelligent. The Defendant clearly waived his rights and made the statements at the police station. Further, the statements made by the Defendant to law enforcement officers at his residence were voluntarily made while the law enforcement officers were executing a valid search warrant, not while the Defendant was in custody, lawful or unlawful."
 {¶ 41} We agree with the trial court's conclusion that appellant's "apology" for his actions made at the beginning of the search was voluntary. The comment was not in response to any questioning by law enforcement officers. The hearing transcript also *Page 11 
supports the fact that appellant was advised of his rights prior to any statements made at the police station. The first statement was voluntary and non-custodial and did not require a Miranda warning. The second statements were given at the police station after being advised of his rights. As the trial court noted, appellant was not an unsophisticated juvenile. He was one month short of his eighteenth birthday and had prior police involvement in a domestic violence case.
 {¶ 42} Upon review, we concur with the trial court's assessment that appellant's statements pre and post Miranda were voluntary.
 {¶ 43} We find the trial court did not err in denying appellant's motions to suppress.
 {¶ 44} Assignments of Error I and II are denied.
 {¶ 45} The judgment of the Court of Common Pleas of Fairfield County, Ohio is hereby affirmed.
 Farmer, P.J., Wise, J. and Edwards, J. concur. *Page 12 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Fairfield County, Ohio is affirmed. *Page 1