[Cite as *State v. Green*, 2023-Ohio-501.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                                    :

                        Plaintiff-Appellee,       :       Case
No.  21CA3760

vs.                                              :

JUSTIN GREEN,                                     :       DECISION AND
                                                          JUDGMENT ENTRY

        Defendant-Appellant.         :

_____

APPEARANCES:

Michael L. Benson, Chillicothe, Ohio, for appellant.

Jeffrey C. Marks, Ross County Prosecuting Attorney, and Pamela
C. Wells, Ross County Assistant Prosecuting Attorney,
Chillicothe, Ohio, for appellee.

_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 2-14-23
ABELE, J.

{¶1}  This is an appeal from a Ross County Common Pleas

Court judgment of conviction and sentence.  The trial court

found Justin Green, defendant below and appellant herein, guilty

of five counts of pandering obscenity involving a minor, in

violation of R.C. 2907.321.

{¶2}  Appellant assigns the following error for review:

        "THE TRIAL COURT ERRED IN DENYING THE
        FEBRUARY 8, 2021 MOTION TO SUPPRESS FILED BY
        DEFENDANT-APPELLANT, JUSTIN GREEN."

On April 1, 2020, Chillicothe Police Detective Christopher Fyffe received a phone call from an individual who identified himself as Agent Alex Harnish. Harnish stated that he worked with the Internet Crimes Against Children task force and informed Fyffe that he would be sending the detective some images depicting minors from a website named Kik. Harnish indicated he would send the detective a compact disk that contained the images, a copy of a subpoena with subscriber information, and other data to assist in the investigation.

{¶4} Shortly thereafter, Detective Fyffe received a compact disk that contained subscriber information for an IP address. This information identified appellant as the subscriber and listed appellant's street address, email address, and phone number. The disk also contained four files, dated June 29, 2019, that each contained an image of possible underage females photographed in various states of undress.

{¶5} On April 7, 2020, Detective Fyffe requested a warrant to search appellant's residence, which the trial court granted. Two days later, the detective served the search warrant and talked to the occupants, appellant and his girlfriend. Appellant admitted that he had used Kik in the past, and his girlfriend stated that appellant "has had a problem in the past

with 'chatting' with young females on Kik."  As a result of the search, the detective seized a cell phone and an Apple iPad. Fyffe later applied for a warrant to search the electronic devices, which the court also granted.

**{¶6}**  A Ross County Grand Jury subsequently returned an indictment that charged appellant with five counts of pandering obscenity involving a minor, in violation of R.C. 2907.321.

**{¶7}**  On February 8, 2021, appellant filed a motion to suppress the evidence obtained from the searches of his residence and electronic devices.  Appellant alleged that the search warrants were not based upon probable cause because the search warrant affidavits were based upon hearsay and the affidavits did not set forth the veracity and basis of knowledge of the person who provided the detective with the information. Appellant additionally argued that the information contained in the affidavits was stale.  He contended that nearly ten months had elapsed since the alleged criminal conduct and, due to the lapse of time, evidence of this criminal conduct was not likely to be found at his residence or on his electronic devices at the time that the detective applied for the search warrant.

**{¶8}**  On March 21, 2021, the trial court held a hearing to consider appellant's motion to suppress the evidence.  At the

hearing, Detective Fyffe testified that on April 1, 2020 a person who identified himself as Agent Alex Harnish with Internet Crimes Against Children called the detective to inform him that the agent would be sending in the mail some pictures and documentation. The detective indicated he also exchanged emails with the agent, but did not recall whether they exchanged emails before or after he requested the search warrants. Fyffe noted that Harnish's email address ended with "ice.dhs.gov."

{¶9} Detective Fyffe also explained that when he received the information from Agent Harnish, it arrived in a certified mail envelope. He did not recall, however, whether the envelope contained a return mailing address. The detective further testified that the information that Harnish sent him contained a subpoena from Franklin County that was issued to Charter Communications. Fyffe stated he does not know who prepared this subpoena, but the subpoena did state that the subpoenaed information should be sent to "Special Agent Anna Edgar of ICE, with the Department of Homeland Security."

{¶10} After hearing the evidence, the trial court overruled appellant's motion to suppress. Later, appellant entered no-contest pleas to the five counts of the indictment.

**{¶11}** On October 20, 2021, the trial court sentenced appellant to serve 12 months in prison for each offense, that the sentences for counts one and two to be served consecutively to one another and the remaining sentences to be served concurrently to the others. This appeal followed.

**{¶12}** In his sole assignment of error, appellant asserts that the trial court erred by overruling his motion to suppress evidence because, appellant contends, the search warrants were not based upon probable cause. Appellant claims that the information contained in the affidavits is not reliable and is stale. Appellant argues that the search warrant affidavits did not include any facts to indicate (1) why the information purportedly obtained from Agent Harnish is reliable, or (2) that Harnish is indeed who he stated he was. As such, appellant believes that Harnish's information should be treated the same as an unidentified informant. Additionally, appellant argues that the nearly ten-month-old information contained in the affidavits did not make it probable that evidence of criminal activity would be found at his residence, or on his electronic devices, at the time that the detective applied for the search warrant.

{¶13} The appellee disputes appellant's characterization of Agent Harnish's information and argues that information obtained from other law enforcement officers may serve as a reliable basis for issuing a search warrant.  The state further disagrees with appellant's assertion that the nearly ten-month-old information did not establish probable cause to believe that evidence of child pornography would be located at his residence, or on his electronic devices, when Detective Fyffe applied for the search warrants.

STANDARD OF REVIEW

{¶14} Appellate review of a trial court's ruling on a motion to suppress evidence involves a mixed question of law and fact. *E.g., State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 32; *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *State v. Moore*, 2013-Ohio-5506, 5 N.E.3d 41, ¶ 7 (4th Dist.).  Appellate courts thus "'must accept the trial court's findings of fact if they are supported by competent, credible evidence.'"  *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 12, quoting *Burnside* at ¶ 8.  Accepting those facts as true, reviewing courts "'independently determine as a matter of law, without deference

to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.'" *Id.*, quoting *Burnside* at ¶ 8.

FOURTH AMENDMENT PRINCIPLES

**{¶15}** The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 14 of the Ohio Constitution contains nearly identical language and provides the same protection as the Fourth Amendment. *E.g., State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶ 16, citing *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 12; *accord State v. Taylor*, 4th Dist. Lawrence No. 15CA12, 2016-Ohio-2781, ¶ 31; *State v. Eatmon*, 4th Dist. Scioto No. 12CA3498, 2013-Ohio-4812, ¶ 11.

**{¶16}** "The 'basic purpose of [the Fourth] Amendment' * * * 'is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.'" *Carpenter v. United States*, ___ U.S. ___, 138 S.Ct. 2206, 2213, 201 L.Ed.2d 507 (2018); *accord Castagnola* at ¶ 33, quoting *Wolf v. Colorado*,

ROSS, 21CA3760

338 U.S. 25, 27, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), overruled on other grounds, *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) ("'The security of one's privacy against arbitrary intrusion by the police * * * is at the core of the Fourth Amendment.'"). Moreover, "[i]n none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home." *Payton v. New York*, 445 U.S. 573, 589, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *accord Florida v. Jardines*, 569 U.S. 1, 6, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013) ("[W]hen it comes to the Fourth Amendment, the home is first among equals."). "'At the Amendment's "very core" stands "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."'" *Collins v. Virginia*, ___ U.S. ___, 138 S.Ct. 1663, 1670, 201 L.Ed.2d 9 (2018), quoting *Jardines*, 569 U.S. at 6, quoting *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961). Accordingly, "the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton*, 445 U.S. at 590; *accord State v. Maranger*, 2018-Ohio-1425, 110 N.E.3d 895, ¶ 20 (2d Dist.) (citations omitted) ("[u]nless a recognized

exception applies, the Fourth Amendment * * * mandates that police obtain a warrant based on probable cause in order to effectuate a lawful search.").

STANDARD FOR ISSUING SEARCH WARRANT

{¶17} A search warrant may only be issued (1) upon probable cause, (2) supported by oath or affirmation, and (3) particularly describing the place to be searched and the person and/or things to be seized. *See King*, 563 U.S. at 459 (the Fourth Amendment allows a warrant to issue only when "probable cause is properly established and the scope of the authorized search is set out with particularity"); *accord* R.C. 2933.23; Crim.R. 41. "The essential protection of the warrant requirement of the Fourth Amendment * * * is in 'requiring that [the usual inferences which reasonable men draw from evidence] be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.'" *Illinois v. Gates*, 462 U.S. 213, 240, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), quoting *Johnson v. United States*, 333 U.S. 10, 13-14, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

{¶18} Accordingly, a search warrant "affidavit must set forth particular facts and circumstances underlying the

ROSS, 21CA3760

existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *Franks v. Delaware*, 438 U.S. 154, 165, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Moreover, the facts and circumstances set forth in the "affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause." *Gates*, 462 U.S. at 239. A search warrant affidavit need not, however, comply with any "'[t]echnical requirements of elaborate specificity.'" *Id.* at 235, quoting *Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Instead,

> [i]n determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

*State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, quoting *Gates*, 462 U.S. at 238-239; *accord Castagnola* at ¶ 35 ("[T]he evidence must be sufficient for the magistrate to conclude that there is a fair probability that evidence of a crime will be found in a particular place.").

**{¶19}** A search warrant affidavit thus must contain "[s]ufficient information" to allow a magistrate or judge to conclude that probable cause to search exists. *Gates*, 462 U.S. at 239. A magistrate or a judge cannot simply ratify "the bare conclusions of others." *Id.* Therefore, "[i]n order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued." *Id.*

**{¶20}** A search warrant issued after a magistrate or judge has independently determined that probable cause to search exists will enjoy a presumption of validity. *State v. Jones*, 90 Ohio St.3d 403, 412, 739 N.E.2d 300 (2000), citing *State v. Roberts*, 62 Ohio St.2d 170, 178, 405 N.E.2d 247 (1980); *State v. Parks*, 4th Dist. Ross No. 1306, 1987 WL 16567 (Sept. 3, 1987), *4; *accord Franks*, 438 U.S. at 171 (search warrant affidavit presumed valid). Thus, "'the burden is on a defendant who seeks to suppress evidence obtained under a regularly issued warrant to show the want of probable cause.'" *United States v. de la Fuente*, 548 F.2d 528, 534 (5th Cir. 1977), quoting *Batten v. United States*, 188 F.2d 75, 77 (5 Cir. 1951); *accord Xenia v. Wallace*, 37 Ohio St.3d 216, 218, 524 N.E.2d 889 (1988), citing *de la Fuente* ("[t]he burden of initially establishing whether a

search or seizure was authorized by a warrant is on the party challenging the legality of the search or seizure"); *State v. Hobbs*, 4th Dist. Adams No. 17CA1054, 2018-Ohio-4059, ¶ 32; *State v. Wallace*, 2012-Ohio-6270, 986 N.E.2d 498, ¶ 27 (7th Dist.) (a defendant who "attacks the validity of a search conducted under a warrant" carries "the burden of proof * * * to establish that evidence obtained pursuant to the warrant should be suppressed").

**{¶21}** A court that is reviewing a defendant's challenge to a probable-cause determination in a search warrant must "accord great deference to the magistrate's" probable-cause determination and must resolve "doubtful or marginal cases" "in favor of upholding the warrant." *George*, paragraph two of the syllabus. Indeed, any "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review." *Gates*, 462 U.S. at 236. Thus, a reviewing court may not "substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant." *George* at paragraph two of the syllabus. Instead, a reviewing court's duty "is simply to ensure that the magistrate had a substantial basis for

concluding that probable cause existed." *Id.; accord Gates*, 462 U.S. at 238-39; *Castagnola* at ¶ 35. Additionally, reviewing courts must refrain from interpreting search-warrant affidavits "'in a hypertechnical, rather than a commonsense, manner.'" *Gates*, 462 U.S. at 236, quoting *United State v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Nevertheless, "a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances, or because the form of the warrant was improper in some respect." *United States v. Leon*, 468 U.S. 897, 915, 104 S.Ct. 3405, 3416-17, 82 L.Ed.2d 677 (1984), citing *Gates*, 462 U.S. at 238-239; *accord State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 13 ("reviewing courts must examine the totality of the circumstances").

{¶22} Probable cause is "a fluid concept" that is "not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. Rather, probable cause "deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). The probable-cause standard

ROSS, 21CA3760

"requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Gates* at 243-244, fn.13. Thus, the probable-cause standard does not set "a high bar." *Kaley v. United States*, 571 U.S. 320, 338, 134 S.Ct. 1090, 188 L.Ed.2d 46 (2014); *accord District of Columbia v. Wesby*, ___ U.S. ___, 138 S.Ct. 577, 586, 199 L.Ed.2d 453 (2018).

SOURCE OF INFORMATION

{¶23} Appellant first alleges that the search warrant affidavits did not establish probable cause because the detective failed to ensure that the source of the information contained in the affidavits (Agent Harnish) is a reliable source. Appellant contends that the detective should have independently verified that Harnish is indeed who he claimed to be.

{¶24} We recognize that "'[o]bservations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number.'" *State v. Henderson*, 51 Ohio St.3d 54, 57, 554 N.E.2d 104 (1990), quoting *United States v. Ventresca*, 380 U.S. 102, 111, 85 S.Ct. 741, 13 L.Ed.2d 684, (1965) (footnote omitted). Thus, Ohio courts generally have held that "a law enforcement

official who obtains information during an official investigation and divulges that information to another law enforcement officer * * * is a credible source." *State v. Herron*, 2nd Dist. Darke No. 1404, 1996 WL 697021, *4; accord *State v. Revere*, 2nd Dist. Montgomery No. 28857, 2022-Ohio-551, ¶ 24, citing *United States v. Horne*, 4 F.3d 579, 585 (8th Cir.1993) ("[P]robable cause may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officer on scene[.]")." This collective-knowledge doctrine permits officers to form probable cause (or reasonable suspicion) based upon information that another law enforcement officer provided. *See, e.g., State v. Wortham*, 145 Ohio App.3d 126, 130, 761 N.E.2d 1151 (2nd Dist.2001)*; United States v. Beck*, 765 F.2d 146 (6th Cir.1985) (the collective-knowledge doctrine typically applied in determining probable cause to arrest "is equally applicable to a search warrant"); *accord United States v. Spears*, 965 F.2d 262, 277 (7th Cir.1992) ("In determining whether probable cause exists, a magistrate is entitled to regard an affiant's fellow law enforcement officers as reliable sources."). Accordingly, Ohio courts generally have upheld search-warrant affidavits that

rely upon information that another officer provided. *Revere*, *supra*; *State v. Jones*, 2nd Dist. Montgomery No. 23926, 2011-Ohio-1984, ¶ 20; *Herron*, supra.

**{¶25}** In *Revere*, for example, the court upheld a search warrant that relied upon information received from another police department. In that case, a Middletown Police detective contacted the Moraine Police Department to request a welfare check at the defendant's residence, the place where a missing person had last been spotted. After officers visited the residence, they sought and were granted a warrant to search. During the search, officers discovered the deceased body of the missing person.

**{¶26}** Subsequently, a grand jury returned an indictment that charged the defendant with several criminal offenses. The defendant later sought to suppress the evidence obtained as a result, but the trial court denied his motion.

**{¶27}** After his conviction, the defendant appealed and argued, in part, that the search warrant affidavit rested upon unreliable hearsay evidence (i.e., the Middletown Police detective's statement that the missing person was last spotted at his residence). The appellate court disagreed and stated: "it is well settled that officers may rely on information

received from other members of the law enforcement community if the reliance is reasonable." *Revere* at ¶ 24, citing *Doran v. Eckold*, 409 F.3d. 958, 965 (8th Cir.2005). The court thus determined that the trial court did not err by concluding that the Middletown Police detective's information was reliable and by overruling the defendant's motion to suppress.

{¶28} Similarly, in the case sub judice, Detective Fyffe relied upon information that Agent Harnish, another law enforcement officer, provided. We find nothing in the record to suggest that the detective's reliance was unreasonable. The detective stated that he received the information via certified mail shortly after he spoke with Harnish, that part of this information included an investigative subpoena issued to the IP provider that included the name of another agent and an email address that ended with ice.dhs.gov. Fyffe stated that Harnish's email address also ended with ice.dhs.gov. Although the detective could not recall whether he exchanged emails with Harnish before or after he applied for the warrant, the information that the detective received in the mail, including the investigative subpoena that listed the name of a Special Agent, her email address ending in ice.dhs.gov and her phone number, shows that he reasonably relied upon the information.

**{¶29}** Consequently, we disagree with appellant that the search warrant affidavits did not contain sufficiently reliable information to support probable cause to believe that a search of his residence and electronic devices would uncover evidence of criminal activity.

STALENESS

**{¶30}** Appellant also asserts that the facts contained in the search-warrant affidavits were too stale to establish probable cause to search his residence or his electronic devices. Appellant points out that the affidavits reference images downloaded in June 2019 – nearly ten months before Detective Fyffe applied for the search warrants. Appellant claims that, given the lapse of time, when the detective applied for the search warrants, he did not have a reasonable basis to believe that this evidence of alleged criminal activity still might be found at his residence or on his electronic devices.

**{¶31}** "Probable cause must be determined as of the date the warrant is requested." *State v. Goble*, 2014-Ohio-3967, 20 N.E.3d 280, ¶ 11 (6th Dist.), citing *State v. Sautter*, 6th Dist. Lucas No. L-88-324, 1989 WL 90630, *3 (Aug. 11, 1989). Thus, "probable cause to search cannot be based on stale information that no longer suggests that the item sought will be found in

the place to be searched." *United States v. Shomo*, 786 F.2d 981, 983 (10th Cir. 1986) (citation omitted); *accord United States v. Wagner*, 951 F.3d 1232, 1246 (10th Cir. 2020); *United States v. Knox*, 883 F.3d 1262, 1273, 1276 (10th Cir. 2018).

**{¶32}** "[T]he timeliness of the information contained in the affidavit is an important variable." *Shomo*, 786 F.2d at 984. However, "probable cause is not determined simply by counting the number of days between the facts relied on and the issuance of the warrant." *Id.* at 983–84 (citation omitted). Instead, "[w]hether facts are 'too stale' to be of probative value must be decided on a case-by-case basis." *Goble* at ¶ 11, citing *Sautter* at *3.

**{¶33}** "'While there is no arbitrary time limit on how old information can be, the alleged facts must justify the conclusion that the subject contraband is probably on the person or premises to be searched.'" *State v. Jones*, 72 Ohio App.3d 522, 526, 595 N.E.2d 485 (6th Dist.1991); *accord State v. Proffit*, 5th Dist. Fairfield App. No. 07CA36, 2008-Ohio-2912, 2008 WL 2573265, ¶ 20 ("Although specific references to dates and times are best, there is no hard and fast rule as to the staleness issue"). "The affidavit must * * * contain some information that would allow the magistrate to independently

determine that probable cause presently exists - not merely that it existed at some time in the past." *State v. Lauderdale*, 1st Dist. Hamilton No. C-990294, 2000 WL 209395, *1 (Feb. 18, 2000), citing *Sgro v. United States*, 287 U.S. 206, 210, 53 S.Ct. 138, 77 L.Ed. 260 (1932).

**{¶34}** When reviewing whether information is too stale to establish probable cause, courts may consider "the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." *Shomo*, 786 F.2d at 983-84 (citations omitted); *accord State v. Reece*, 3d Dist. Marion No. 9-17-27, 2017-Ohio-8789, ¶ 15, and *State v. Jendrusik*, 7th Dist. Belmont No. 06-BE-06, 2006-Ohio-7062, ¶ 21 (listing factors more specifically as "(1) the nature of the crime; (2) the criminal; (3) the thing to be seized, as in whether it is perishable and easily transferable or of enduring utility to its holder; (4) the place to be searched; and (5) whether the information in the affidavit relates to a single isolated incident or protracted ongoing criminal activity").

**{¶35}** For example, when "the property sought is likely to remain in one place for a long time, probable cause may be found even though there was a substantial delay between the occurrence of the event relied on and the issuance of the warrant." *Shomo*,

ROSS, 21CA3760

786 F.2d at 984 (citations omitted). In other cases, like drug cases where drugs are often sold or used promptly, information that is months-old may well be stale. *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir.2009), citing *United States v. Kennedy*, 427 F.3d 1136, 1142 (8th Cir.2005) ("[I]nformation of an unknown and undetermined vintage relaying the location of mobile, easily concealed, readily consumable, and highly incriminating narcotics could quickly go stale in the absence of information indicating an ongoing and continuing narcotics operation.") (citations omitted). In cases involving child pornography, however, months-old information may not be stale "because the images can have an infinite life span." *Id.; accord State v. Dixon*, 10th Dist. Franklin No. 21AP-152, 2022-Ohio-4532, ¶ 30, quoting *State v. Eal*, 10th Dist. No. 11AP-460, 2012-Ohio-1373, ¶ 22 ("'child pornography collectors tend to retain their collections for long periods of time helps prevent otherwise dated information from becoming stale'"); *State v. Lowe*, 2nd Dist. Montgomery No. 26994, 2017-Ohio-851, ¶ 13 ("In cases of child pornography, we have held that the elapse of substantial periods of time often do not render the information in a supporting affidavit stale."); *Eal* at ¶ 24 ("an issuing magistrate * * * independently may notice that conduct involving

ROSS, 21CA3760

child pornography is of a continuing nature."); *State v. Ingold*, 10th Dist. Franklin No. 07AP-648, 2008-Ohio-2303, ¶ 37 ("the enduring quality of child pornography to the perpetrator").

**{¶36}** In *Frechette*, for example, the court determined that information that a defendant paid for a one-month subscription to a child-pornography web site still supported probable cause to believe that evidence of criminal activity would be located at the defendant's home even though officers executed the search warrant 16 months after the defendant's one-month subscription ended.  In analyzing the staleness factors, the court observed that "child pornography is not a fleeting crime," and "'is generally carried out in the secrecy of the home and over a long period.'"  *Id.*, quoting *United States v. Paull*, 551 F.3d 516, 522 (6th Cir.2009).  Additionally, "'evidence that a person has visited or subscribed to web sites containing child pornography supports the conclusion that he has likely downloaded, kept, and otherwise possessed the material.'"  *Id.*, quoting *United States v. Wagers*, 452 F.3d 534, 540 (6th Cir.2006).  Thus, unlike drug cases in which drugs typically are quickly transferred or used, "digital images of child pornography can be easily duplicated and kept indefinitely even if they are sold or traded.  In short, images of child pornography can have an infinite life

span." *Id.* at 379, citing *United States v. Terry*, 522 F.3d 645, 650 fn. 2 (6th Cir.2008) ("Images typically persist in some form on a computer hard drive even after the images have been deleted and, as ICE stated in its affidavit, such evidence can often be recovered by forensic examiners."). The court thus concluded that "'the same time limitations that have been applied to more fleeting crimes do not control the staleness inquiry for child pornography.'" *Id.*, quoting *United States v. Paull*, 551 F.3d 516, 522 (6th Cir.2009).

**{¶37}** Applying these factors led the *Frechette* court to conclude that the 16-month-old information regarding the defendant's one-month subscription was not stale information. The court therefore determined that the magistrate correctly considered the information when deciding whether probable cause supported issuing the search warrant.

**{¶38}** In the case sub judice, the search warrant affidavits contained information that, nearly ten months earlier, appellant had downloaded child pornography. Because these images may exist forever and because perpetrators often hold on to the images for long periods of time, we believe that the ten-month-old information is not stale. Consequently, we do not agree with appellant that the information contained in the search-

warrant affidavits was too stale to support probable cause to believe that his residence and electronic devices would contain evidence of child pornography.[1]  The trial court, therefore, did not err by overruling appellant's motion to suppress the evidence discovered upon executing the search warrants.

{¶39} Accordingly, based upon the foregoing reasons, we overrule appellant's assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

---

[1] Because we have determined that probable cause supported issuing the search warrant, we do not consider the state's alternate argument that the good-faith exception applies.

ROSS, 21CA3760

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of 60 days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the 60-day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the 45-day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.