JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal from a judgment of the Cuyahoga County Common Pleas Court denying the motion to suppress and the return of seized property of defendant-appellant, Eddie Coleman, as to two distinct residences, based on two search warrants simultaneously obtained from another judge of the same court. We find that there was probable cause to search and seize the property at both residences and affirm the trial court's denial of the motion to suppress and return of seized property while the case was pending. However, we reverse the trial court's denial of the motion for return of some of the seized property, once Coleman was convicted after trial and sentenced.
 {¶ 2} On August 17, 2007, Coleman was indicted on the following four counts: possession of drugs (count 1), drug trafficking (count 2), possession of drugs (count 3), and possessing criminal tools (count 4).
 {¶ 3} Coleman, who was driving a black GMC Sierra, Ohio license plate DVU8000, was arrested on May 31, 2007, in the driveway at 1753 Strathmore Avenue (Strathmore), in East Cleveland, Ohio, as two search warrants were being simultaneously executed by Cleveland police narcotics detectives. One search warrant had been obtained for the residence on Strathmore; the second search warrant had been obtained for the residence at 1957 Revere Road, Cleveland Heights, Ohio (Revere). The search warrants were obtained as a result of an investigation of Coleman during the month of May 2007. *Page 4 
 {¶ 4} On September 21, 2007, Coleman filed a motion to suppress and for the return of illegally seized property. His motion challenged the statements contained in the two affidavits in support of the search warrants made by the affiant, a narcotics detective who had signed and subscribed both affidavits. The detective stated in the affidavits that "after a brief period of time a gold-colored Cadillac Escalade truck with Ohio license plates ECF7159" arrived at 1753 Strathmore.
 {¶ 5} In support of his motion to suppress, Coleman offered his own affidavit in which he stated that "[he] is the defendant herein. *** [he] owns a `gold colored Cadillac Escalade truck,' as alleged in the affidavit *** for 1753 Strathmore Avenue in East Cleveland, Ohio." He further stated, "I do hereby deny this vehicle had, on the dates indicated as to when the alleged sale occurred, any license plates on itother than the 30-day tag-issued for the [sic] it." Lastly, he stated that "[t]he upshot of the thrust of this affidavit is that the affiant is less then [sic] honest when he alleges my `gold colored Escalade,' while bearing the indicated license plates, was involved in a drug transaction."
 {¶ 6} On October 15, 2007, Coleman filed a motion for production of alleged informant and a motion for a Franks hearing.[1] On the same day, the *Page 5 
State filed its response to Coleman's motion to suppress and for the return of illegally seized property. Coleman filed his reply to the State's response to defendant's motion to suppress on November 1, 2007.
 {¶ 7} In Coleman's reply, he included an affidavit from an agent of Central Cadillac, which stated that Central Cadillac's records indicate that Coleman picked up his plates for the 2007 Escalade, VIN 1GYFK63887R356625, Plates ECF7159, on June 8, 2007. Also in the reply brief is an affidavit executed by Coleman, in which he stated "Eddie Coleman, the Defendant, hereby by this writing swears, and avers, that contrary to the statements in the affidavits relied on for the issuance of warrants to search homes at 1753 Strathmore Avenue, East Cleveland, and 1957 Revere Road, Cleveland Heights, Ohio, in which it was said that he had operated a motor vehicle bearing license plates ECF7159 within 72 hours of May 25, 2007, is totally false. Indeed as these statements in the affidavits to the contrary notwithstanding, the facts will show the license plates ECF7159, although issued for him, i.e., Eddie Coleman, on May 22, 2007, were not placed on the vehicle before June 8, 2007. This was the day they were retrieved by him from Central Cadillac." *Page 6 
 {¶ 8} On November 20, 2007, the court conducted a hearing at which it adopted the State's position that there was no need for an evidentiary hearing on Coleman's motions. The trial court determined that, according to Ohio cases interpreting the seminal case of Franks, there was no need for an evidentiary hearing if, after excluding material in the affidavit alleged to have been false, remaining portions of the affidavit established probable cause to search.
 {¶ 9} Coleman argued that he could not have been operating a vehicle with the license plates set forth in the affidavits executed by the narcotics detective because he did not pick up his permanent license plates, ECF7159, until June 8, 2007. Coleman further argued that the portion of the affidavits containing the statement from the confidential reliable informant (CRI) that he [Coleman] was involved in a drug transaction when operating a particular Cadillac was also false. Coleman unsuccessfully argued that his statements in the affidavit warranted an evidentiary hearing under Franks.
 {¶ 10} The court stated on the record its ruling on that portion of Coleman's motion seeking to suppress the search of the two residences and the property seized therein based on the statements in the search warrants as follows:
"THE COURT:
 And the motion to suppress that the search — based upon the search warrant is denied. With respect to some kind of an illegal arrest argument, I'm going to ask the counsels [sic] to brief that and go ahead and set a hearing. *Page 7 
 I'll have you pick a date with my bailiff that comports with both your schedules[,] but the motion to suppress the search based upon the warrant is denied. The Court has reviewed the warrant and there's sufficient probable cause.
 MR. WILLIS:
 We're asking under Rule 12(F) that the Court articulate whatever findings that it deems to be appropriate in connection with its denial of the motion.
 THE COURT:
 Counsels [sic] could feel free to submit proposed findings of fact and conclusions of law for the Court to review, and the Court can issue same at that time." (Tr. 13-14.)
 {¶ 11} A review of the record reveals that neither the court nor the parties supplied any findings of fact and conclusions of law specifically related to the court's ruling at the November 20, 2007 hearing.
 {¶ 12} In addition to the brief ruling on the record summarized above, the court also issued the following journal entry on November 20, 2007, filed November 27, 2007:
 "Defendant's motion to suppress search warrant based on search warrant, filed 9-21-2007, is denied. Hearing on Defendant's motion to proceed as to arrest and search incident to arrest set for hearing."
 {¶ 13} Although the journal entry of the court does not reflect this, the court at the November 20, 2007 hearing impliedly denied Coleman's motions for *Page 8 
production of alleged informant, for a Franks hearing, and for the return of seized property.
 {¶ 14} On January 16, 2008, the trial court had a hearing on the balance of Coleman's motion to suppress filed September 21, 2007. The court's entry of January 16, 2008, states:
 "DEFENDANT IN COURT. COUNSEL JAMES R. WILLIS PRESENT. PROSECUTOR(S) STEVEN GALL PRESENT. TRIAL SET FOR 1/28/2008 AT 9:00 A.M. MOTION TO SUPPRESS HEARING HELD 1/16/2008. DEFENDANT'S MOTION TO SUPPRESS THE SEARCH INCIDENT TO ARREST, FILED 9-21-07 IS DENIED. ***."
 {¶ 15} At the conclusion of the January 16, 2008 hearing, Coleman's counsel requested findings of fact and conclusions of law pursuant to Crim. R. 12(F). The trial court instructed the prosecutor to prepare same. The prosecution submitted findings of fact, which were signed by the trial court. The following findings of fact were filed on January 22, 2008:
 "This matter came on for hearing on the 16th day of January 2008 on defendant's Motion to Suppress. Upon due consideration of the testimony and evidence submitted, the Court makes the following findings:
 That at the time of defendant's arrest, members of the Cleveland Police were executing a valid search warrant (State's Exhibit #1). The Court further finds that the Search Warrant specifically authorized the officers to make a search of the subject residence as well as `*** it's [sic] curtilage, *Page 9 common and storage areas, vehicles on the premises and any person present therein' (Emphasis added.)
 The Court further finds that at the time of his arrest, the defendant was in a vehicle which had just pulled in the driveway of the subject premises and had parked the vehicle next to the building located thereon. The Court further finds that as Lt. Connelly approached the passenger side of defendant's vehicle, he could see what he recognized to be the outline of a kilogram of cocaine in what Lt. Connelly thought was defendant's right front pants pocket. When the defendant was removed from the vehicle the suspected kilogram of cocaine slid down inside defendant's sweat pants to his ankle area where it was recovered by police. The recovered cocaine was submitted for scientific testing and was found to be cocaine with a weight of 992.6 grams (which is just under a kilogram).
 Accordingly, defendant's Motion to Suppress is denied."
 {¶ 16} The trial court, having received a jury waiver from Coleman, proceeded to a bench trial on January 28, 2008. Coleman was convicted of all counts. The trial court, on that same date, immediately proceeded to sentencing and imposed a total sentence of eighteen years in prison as follows: eight years on count one, drug possession involving close to a kilo of cocaine, and ten years on count two, drug trafficking in cocaine, with the sentences to run consecutive to each other; six months on count three, possession of cocaine involving less than ten grams, and twelve months on count four, possessing criminal tools, with the sentences to run concurrent to each other and concurrent to counts one and two. *Page 10 
 {¶ 17} The trial court did not rule on the State's petition for forfeiture of seized contraband filed on August 16, 2007. A review of the record and the docket entries of the court reveals that the court did not address the disposition of seized contraband taken from the two premises or the person of Coleman on May 31, 2007.
 {¶ 18} Coleman does not challenge the sufficiency of the evidence relating to these convictions. Rather, he challenges the trial court's denial of his motion to suppress and to return seized evidence obtained from what he contended were two invalid search warrants. Given the limited nature of the issues dealing with Coleman's motion to suppress, we will not summarize the trial testimony. Instead, we turn to analyze the two search warrants involved herein, one executed at Strathmore and the other at Revere. Coleman maintains that neither search warrant was sufficient to establish probable cause for a search of the listed premises. We will summarize the affidavits as the facts contained in the search warrants are pertinent to the central issues presented in the instant appeal.
AFFIANT'S STATEMENTS AS TO TRAINING AND EXPERIENCE IN INVESTIGATINGDRUG TRAFFICKERS
 {¶ 19} The first seven paragraphs of the affidavits in support of the two search warrants are identical. In these prefatory paragraphs, affiant sets forth his years of experience and resulting knowledge in investigating drug traffickers. Affiant stated that he has been a member of the Cleveland Police Department *Page 11 
for nearly fourteen years, and a detective for almost nine years. He stated that as part of his basic course in the police academy, he received training in recognition of controlled substances, the methods of packaging controlled substances on the street, the manner in which sellers of controlled substances operate, and the detection of narcotics trafficking. He further stated that he has conducted hundreds of investigations into drug traffickers, making in excess of 1,500 arrests for violations of State drug laws. He stated he has interviewed hundreds of drug traffickers as well as drug abusers. He stated he has participated in the execution of over 500 search warrants and in excess of 1,000 controlled purchases of narcotics involving confidential informants.
 {¶ 20} Based on this training and experience, affiant stated that he is "familiar with the modus operandi of persons involved in the illegal distribution of controlled substance as well as the terminology used by persons involved in the illegal distribution of controlled substances."
 {¶ 21} Affiant stated he has been involved in the execution of numerous search warrants, arrest warrants, and seizure warrants related to narcotics trafficking. These warrants involved the search of locations ranging from residences of targets, residences of traffickers' associates and relatives used by the traffickers as "fronts" to legitimize their activities, and safety deposit boxes utilized by narcotic traffickers for the purpose of securing and secreting the proceeds from illegal drug sales. Affiant stated he has prepared hundreds of *Page 12 
affidavits and was responsible for the processing of the seized evidence. He further stated that material searched for and recovered in these locations have included: narcotics; records pertaining to the purchase, sale and distribution of narcotics; records relating to the expenditure of profits realized from narcotics distribution; currency; and the various assets purchased from narcotics trafficking proceeds.
 {¶ 22} Based on his training and experience described, the affiant-detective stated that "persons involved in the illegal distribution of controlled substances will attempt to conceal their identities, the location at which the drug transaction has taken place, and the flow of proceeds derived from their illicit drug transactions into `clean' currency."
 {¶ 23} The affiant proceeded to set forth the following information regarding drug traffickers. Drug traffickers often place assets in the names of nominees in an attempt to conceal their true ownership and to avoid detection and/or forfeiture of those assets by governmental agencies. They often continue to use these assets and exercise dominion and control over them, even though these assets are in nominees' names. They have on hand large sums of United States currency in order to maintain and finance their ongoing narcotics activities and other businesses, as well as for paying bills, acquiring assets, and making other purchases. They commonly secure contraband, proceeds of drug sales, and records of drug transactions in secure locations within their *Page 13 
residences, the residences of their associates, and the residences of family members for ready access and to conceal such items from local authorities. They commonly conceal in their residences the following: large sums of United States currency, financial instruments, other items of value and/or proceeds of the drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting or spending large sums of money derived from engaging in narcotics trafficking. They commonly keep records linking them to their trafficking. These records of narcotics sales, debts, shipments, and telephone books identify customers and/or co-conspirators, sometimes using photographs of co-conspirators. Affiant further stated that, even if off-site locations are used by drug traffickers to store such records, some evidence, such as safety deposit keys, records, and receipts and/or documents regarding mini-warehouses, mail, and answering services will be present in their or their associates' residences.
 {¶ 24} Before addressing specific facts as to each residence, affiant also stated in both affidavits that he "has participated with other members of his unit in an ongoing investigation into the drug trafficking operations further described in the affidavits. Affiant has not always personally observed everything described below, but that which he did not personally observe was described to him by the other investigating officers and or agents who did."
STRATHMORE SEARCH WARRANT *Page 14 {¶ 25} The affidavit for the search warrant for the Strathmore premises states that the affiant has good cause to believe that the following is now being unlawfully kept, concealed, and possessed:
 "Cocaine and other narcotic drugs *** instruments and paraphernalia used in the taking of drugs and/or preparation of illegal drugs ***, records of illegal transactions, articles of personal property, papers and documents tending to establish the identity of persons in control of the premises, any and all evidence of communications used in the furtherance of drug trafficking activity, including, but not limited to, computers and their contents, computer disks and their contents, computer accessories and their contents, pagers and their contents, cellular telephones and their contents, answering machines and their contents, and answering machine tapes and their contents, any and all other contraband, including, but not limited to, money, firearms, and other weapons being illegally possessed therein, and any and all evidence pertaining to the violation of the drug laws of the State of Ohio, to wit: Ohio Revised Code Chapter 2925."
 {¶ 26} The following paragraphs set forth the particularized facts giving rise to the affiant-detective's request for the search warrant at Strathmore:
 "8. Affiant avers that within the past 72 hours affiant did meet with Confidential Reliable Informant (referred to as CRI). CRI has been made reliable in that CRI has participated in 2 controlled purchases of narcotics which led to the issuance of a county search warrant and will lead to the subsequent arrest of an individual for violations of state drug laws. CRI has also provided information to affiant in the past 3 weeks c/w other drug traffickers which has been corroborated by other sources and always proven reliable.
 "9. Affiant avers that CRI stated a male named Eddie Coleman who CRI describes as a B/M/44 years old/5'5"/175 lbs/brown skin with clean shaven face and *Page 15 cellular phone #216-387-3387 and drives a gold colored Cadillac Escalade truck is selling cocaine from his mother's house on Strathmore. CRI stated the house is the first house on Strathmore from Euclid directly behind the Auto Zone. CRI stated that Coleman keeps the cocaine in a small room on the 3rd floor of this location. CRI stated that Coleman lives somewhere in Cleveland Heights where he keeps his money. CRI stated they could arrange for a controlled purchase of cocaine from Coleman at the Strathmore location.
 10. Affiant did meet with CRI at a prearranged location. CRI and their [his] vehicle were [was] searched and found to be free of money and drugs. CRI then issued a predetermined amount of US currency (the serial numbers to which were previously recorded). CRI was then equipped with a listening/sound recording device. Members of affiant's unit did have surveillance set up at 1753 Strathmore (which was the first house directly behind the Auto Zone). After a brief period of time a gold colored Cadillac Escalade truck with Ohio license plate ECF1759[2] arrived at this location. A male exited this vehicle and entered this location via a front entrance. CRI then drove directly from the meet location to 1753 Strathmore. CRI exited their [his] vehicle and the male from the Escalade truck exited the front door of this location. CRI and this male had a conversation and this male then went back inside this location. After a brief period of time this male again exited this location and sold CRI an amount of suspected cocaine. CRI returned to their [his] vehicle and left his location followed by affiant. CRI drove back to the prearranged meet location.
 11. Affiant avers at the prearranged meet location CRI did give affiant a plastic baggie with suspected cocaine that CRI stated they [he] purchased from Eddie Coleman at 1753 Strathmore. CRI and their vehicle *Page 16 were again searched and found to be free of money and drugs.
 12. Affiant states that affiant did conduct a field test of above suspected cocaine using a NIK field test kit and did test positive for cocaine. Above suspected cocaine was later entered into evidence and submitted to Cleveland Police Scientific Investigation Unit for analysis, and lab results were still pending.
 13. NIK field test kit is made reliable in that members of the Cleveland Police Narcotics unit and other Cleveland Police detectives have used said field test kits numerous times in the past and that whatever field tested items were then retested by police laboratories the results of said field test always proved true and accurate, said field test has never proven inaccurate in the experience of the affiant.
 14. Affiant avers that affiant did run a computerized Cleveland Police Record Management System (referred to as RMS) check on 1753 Strathmore and found that Eddie Coleman DOB SS as his home address c/w 3 police reports he made in 1993 and an arrest in 1991.
 15. Affiant avers that affiant did learn from Cuyahoga County Auditor that 1753 Strathmore East Cleveland Parcel # is listed as a single family house with the owner Parlee Coleman.
 16. Affiant avers that affiant did run a computerized LEADS check of Ohio License plate ECF7159 which listed to VAUL Trust with home address of 1957 Revere in Cleveland Heights, Ohio with additional owner of Eddie Coleman SS# ***.
 17. Affiant did run a computerized LEADS check of SS# *** which listed to Eddie Coleman with a home address of 1957 Revere Road, Cleveland Heights issued on 11-7-06. *Page 17 
 18. Affiant did run a Cuyahoga County Auditor check of 1957 Revere (parcel #683-19-025) which listed the owner as Eddie Coleman of a single family house.
 19. Affiant did run a computerized Cleveland RMS check on 1957 Revere and found that Eddie Coleman DOB 11-7-62 had used 1957 Revere as his home address on 6-22-02 as a witness c/w a theft and again on 9-7-98 c/w a traffic citation for playing sound devices and on 6-21-99 an impounded vehicle.
 20. Affiant avers that affiant did run a computerized criminal history check on Eddie Coleman DOB 11-7-62 which did reveal numerous prior felony arrests and convictions including but not limited to CR#11-30-05 plead guilty to 2 counts of RSP felony 5th degrees, CR#275571 on 6-10-92 plead guilty to drug law ORC 2925.11 a felony 4th degree, CR # 234103 on 4-7-89 plead guilty to drug abuse, CR#217567 on 7-15-87 plead guilty to trafficking marijuana a felony 4th degree.
 21. Affiant avers that in the past 72 hours affiant did conduct surveillance in the early morning hours of the property located at 1957 Revere Avenue Cleveland Heights, Ohio, in which persons would normally be asleep and observed the above described gold Cadillac Escalade truck parked in the driveway of this location.
 22. Affiant avers that in his recent experience, individuals who engage in the illegal drug trade frequently utilize safes for the storage of their contraband.
 23. Affiant avers that in affiant's training and experience persons who engage in ongoing drug operations in quantities of more than merely street sales, will use multiple locations for the concealment of the drugs, records of the drug activity and the large sums of cash generated from these sales. This makes the seizure of these items less likely if a controlled buy of drugs is made from one location. In addition, the use of multiple locations impedes the ability of those persons who steal from drug dealers to find the dealers['] *Page 18 assets. It has also been affiant's experience that drugs, money and records are frequently concealed at the residence of the drug traffickers and or elder family members because such location is less likely to draw the attention as being part of the drug trafficking enterprise.
 24. Affiant avers that it is urgently necessary that the above described premises be searched in the NIGHT SEASON forthwith to prevent the above property from being concealed or removed and for the safety of the executing officers.
 25. Affiant states that in his experience persons who traffic in illegal drugs frequently keep weapons, such as firearms, on or about their person or within their possession for the purpose of guarding the illegal drugs and the large amounts of cash generated by the sale of said drugs and for use against law enforcement officials to prevent apprehension.
 26. In the experience of affiant, persons who traffic in illegal drugs frequently keep records, of illegal transactions, including but not limited to computers, computer files and records, and evidence of communications used in the furtherance of drug trafficking activity, including but not limited to, pagers, cellular telephones, answering machines, and answering machine tapes.
 27. Based on the above-stated facts, affiant avers that there is probable cause to believe that the above-described Eddie Coleman is a drug traffickers [sic] and that they [he] have [has] been operating on [sic] ongoing trafficking operation; that 1753 Strathmore is a distribution point for this mid level drug trafficking operation; that the location on Revere is a place where proceeds and records from drug trafficking activities are kept and concealed; and that the Cadillac Escalade truck is a vehicle used in the furtherance of said drug trafficking operation. *Page 19 
 S/Affiant Sworn to and subscribed in my presence this 25 day of May, 2007/S/Judge of the Cuyahoga County Common Pleas Court."
REVERE WARRANT {¶ 27} The affidavit for the search warrant of the Revere premises states that the affiant has good cause to believe that there is now being unlawfully kept, concealed, and possessed there the following:
 "(1) U.S. currency (2) books, records, receipts, banks statement and records deposit slips, withdraw [sic] slips, cancelled checks, money drafts, letters of credit, money orders, wire transfer slips, official check and cashier check receipts, passbooks, records pertaining to loans or mortgages, records of and the keys for safety deposit boxes and other items evidencing the obtaining, secreting, transfer and or concealment of money (3) all writings which may represent handwriting samples of the subjects named in this affidavit (4) papers and documents tending to establish the identity in control of 1957 Revere Avenue, Cleveland Heights, Ohio, and 1753 Strathmore Avenue, East Cleveland, Ohio (5) addresses and telephone books and papers reflecting the names, addresses and or telephone numbers including but not limited to, names of, addresses for and telephone numbers of individuals named in this affidavit and others yet unknown (6) photographs and photographic albums, in particular of co-conspirators['] assets or currency (7) any and all records and documents to include cellular phone contracts and billing statements, cellular phone contracts and billing statements of memory for any cellular phones and or pagers (8) any and all evidence of communications used in the furtherance of drug trafficking activity including but not limited to computers, and their contents, computer disks and their contents, computer accessories and their contents (9) any records of drug trafficking to include but not limited to ledgers, notebook, etc. *** (10) firearms (11) records of illegal drug transactions and any and all contraband used in the furtherance of drug trafficking (12) cocaine and crack cocaine[,] any illegal *Page 20 narcotics, and any and all evidence pertaining [to] the violation of Chapter 2925 of the Ohio Revised Code."
 {¶ 28} The following paragraphs set forth the particularized facts giving rise to
 {¶ 29} the affiant-detective's request for the search warrant at Revere.
 "8. Affiant avers that within the past 72 hours affiant did meet with Confidential Reliable Informant (referred to as CRI). CRI has been made reliable in that CRI has participated in 2 controlled purchases of narcotics which led to the issuance of a county search warrant and will lead to the subsequent arrest of an individual for violations of state drug laws. CRI has also provided information to affiant in the past 3 weeks c/w other drug traffickers which has been corroborated by other sources and always proven reliable.
 9. Affiant avers that CRI stated a male named Eddie Coleman who CRI describes as a B/M/44 years old/5'5"/175 lbs/brown skin with clean shaven face and cellular phone #216-387-3387 and drives a gold colored Cadillac Escalade truck is selling cocaine from his mother's house on Strathmore. CRI stated the house is the first house on Strathmore from Euclid directly behind the Auto Zone. CRI stated that Coleman keeps the cocaine in a small room on the 3rd floor of this location. CRI stated they could arrange for a controlled purchase of cocaine from Coleman at the Strathmore location.
 10. CRI states that Coleman lives somewhere in Cleveland Heights. And CRI further confirmed that is where he keeps his money."
 {¶ 30} Paragraphs 11-21 of the Revere affidavit are identical to the Strathmore warrant allegations numbered 10-20. Again, the information *Page 21 
regarding plate #ECF7159 has been excised in our review. The balance of the Revere affidavit states as follows:
 "22. Affiant avers that in the past 72 hours affiant did conduct surveillance on the above-described premises in the early morning hours in which persons would normally be asleep and observed the above described gold Cadillac Escalade truck parked in the driveway of this location.
 23. Affiant avers that in his recent experience, individuals who engage in the illegal drug trade frequently utilize safes for the storage of their contraband.
 24. Affiant avers that in affiant's training and experience, persons who engage in ongoing drug operations in quantities of more than merely street sales, will use multiple locations for the concealment of the drugs, records of the drug activity and the large sums of cash generated from the sales. More importantly, based on affiant's recent training and experience, these individuals will sell drugs from one location, and keep records of the drug activity, including proceeds, at another location. This makes the seizure of these items less likely if a controlled buy of drugs is made from one location. In addition, the use of multiple locations impedes the ability of those persons who steal from drug dealers to find the dealer[']s assets. It has also been affiant's experience that drugs, money and records are frequently concealed at the residence of the drug traffickers and or elder family members because such location is less likely to draw the attention as being part of the drug trafficking enterprise.
 25. Affiant avers that it is urgently necessary that the above-described premises be searched in the NIGHT SEASON forthwith to prevent the above property from being concealed or removed and for the safety of the executing officers. *Page 22 
 26. Affiant states that in his experience persons who traffic in illegal drugs frequently keep weapons, such as firearms, on or about their person or within their possession for the purpose of guarding the illegal drugs and the large amounts of cash generated by the sale of said drugs and for use against law enforcement officials to prevent apprehension.
 27. In the experience of affiant, persons who traffic in illegal drugs frequently keep records of illegal transactions, including but not limited to computers, computer files and records, and evidence of communications used in the furtherance of drug trafficking activity, including, but not limited to, pagers, cellular telephones, answering machines, and answering machine tapes.
 28. Based on the above stated facts, affiant avers that there is probable cause to believe that the above-described Eddie Coleman is a drug traffickers [sic] and that they [sic] have been operating on [sic] ongoing trafficking operation; that 1753 Strathmore is a distribution point for this mid level drug trafficking operation; that the location on Revere is a place where proceeds and records from drug trafficking activities are kept and concealed; and that the Cadillac Escalade truck is a vehicles [sic] used in the furtherance of said drug trafficking operation.
 S/ Affiant
 Sworn to before me and subscribed in my presence. S/Judge of the Cuyahoga County Common Pleas Court."
 {¶ 31} At the same time, on May 31, 2007, one group of narcotics detectives set up surveillance at Strathmore and another group at the Revere location. Detectives, pursuant to the first search warrant, entered the premises of the Strathmore location. At the same time, detectives, pursuant to the second search warrant, entered the Revere location. From the Revere house, the *Page 23 
detectives retrieved personal papers belonging to Coleman, approximately $16,500 of U.S. currency hidden in various items of clothing, and a box of bullets.
 {¶ 32} Coleman was arrested as the detectives were entering the Strathmore house. Two detectives approached the vehicle in which Coleman was sitting in the driveway. One of the detectives observed the appellant place what he recognized to be approximately 1 kilo or 992 grams of cocaine into what he thought to be Coleman's right front pants pocket. When Coleman was removed from the vehicle, the suspected cocaine slid down Coleman's pant leg to his ankle and was recovered by the police.
 {¶ 33} In addition to the large amount of cocaine on Coleman's person, the detectives recovered from the Strathmore address the following: scales; more currency; inositol powder, commonly used as a cutting agent for cocaine; personal papers; marijuana and cocaine in an amount less than 10 grams. At the time of his arrest, Coleman stated that he found the approximate kilo of cocaine just before their arrival.
SEARCH WARRANT INVENTORY LIST FOR 1753 STRATHMORE
1 kilo powder cocaine: on person of Eddie Coleman
$2,306.00: on person of Eddie Coleman
Digital scale: n/w bedroom
$650: n/w bedroom
Nextel cell phone: in truck in driveway
Bag of marijuana: on person of Eddie Coleman
Personal papers/mail: throughout house *Page 24 
2 bags of marijuana: in Mercedes
Personal papers: in truck in driveway
Cell phone: on person of Eddie Coleman
Pro-scale w/cocaine residue: basement
Bottle of inositol powder: basement
Bag of cocaine in white bag: basement
Digital scale w/residue: in basement
SEARCH WARRANT INVENTORY LIST FOR 1957 REVERE
Personal papers: kitchen
US currency $965: upstairs master bedroom, suit jacket pocket in closet
Tan suit jacket: upstairs master bedroom in closet
Bag of US currency: upstairs master bedroom in closet, orange jacket pocket
Bag of US currency: upstairs master bedroom in closet, tan pullover pocket
Orange jacket: upstairs master bedroom in closet
Tan pullover jacket: upstairs master bedroom in closet
Box of bullets: upstairs master bedroom in closet
 {¶ 34} Coleman's appellate counsel raises five assignments of error for our review. Some assignments of error contain similar arguments and will therefore be combined for review where appropriate. Assignments of error one, three, and four deal with denial of Coleman's motion to suppress the evidence incident to the search warrants. As these arguments are interrelated, both legally and factually, we discuss them together.
ASSIGNMENT OF ERROR I.
 "THE COURT ERRED WHEN IT DENIED THE APPELLANT'S `MOTION TO SUPPRESS AND FOR THE RETURN OF ILLEGALLY SEIZED PROPERTY.'"
ASSIGNMENT OF ERROR III.
 "THE COURT ERRED WHEN IT DENIED (WITHOUT A HEARING AND THUS WITHOUT MAKING ANY FACTUAL FINDINGS) THE DEFENDANT'S MOTION FOR THE *Page 25 FRANKS HEARING AND FOR THE DISCLOSURE OF THE IDENTITY OF THE SO-CALLED SOURCE."
ASSIGNMENT OF ERROR IV.
"DUE PROCESS IS DENIED AN ACCUSED WHEN A TRIAL COURT SUMMARILY DENIESA MOTION TO SUPPRESS FOR THE RETURN OF ILLEGALLY SEIZED PROPERTY, AND INSO DOING, EITHER REFUSES OR SIMPLY FAILS TO COMPLY WITH RULE 12(F),RULES OF CRIMINAL PROCEDURE."
STANDARD OF REVIEW
 {¶ 35} The Supreme Court of Ohio in State v. George (1982),45 Ohio St.3d 325, articulated the standard of review in reviewing sufficiency of probable cause in an affidavit submitted in support of a search warrant that has been issued and executed. "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for including that probable cause existed." Id. at paragraph two of the syllabus. As recently stated in Parr, supra, "[t]his is a more deferential standard then de novo review."
 {¶ 36} We are also mindful of the other considerations the Ohio Supreme Court outlined in its syllabus in George:
 "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, `[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" George at paragraph one of syllabus, quoting Illinois v. Gates (1983), 462 U.S. 213, 238-239, followed. *Page 26 
 "In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. *** In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." George at paragraph two of syllabus, citing Gates at 237.
PRELIMINARY FRANKS ISSUE {¶ 37} Coleman first argues that the affiant did not act in good faith when preparing the affidavit for the search warrants because both affidavits included an incorrect description of the license plates on the gold Cadillac Escalade.
 {¶ 38} As previously stated in Roberts at 177, the Ohio Supreme Court adopted the following standard established by the United States Supreme Court in Franks, in determining the circumstances in which a defendant is entitled to an evidentiary hearing to challenge the veracity of the facts set forth in an affidavit in support of a search warrant that has been issued and executed: "[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." Franks at 155-156. *Page 27 
 {¶ 39} The court in State v. Taylor, 174 Ohio App.3d 477,2007-Ohio-7066, concisely summarized the analysis to be conducted in examining a challenge to a search warrant on the basis that it contained false statements.
 "An affidavit supporting a search warrant enjoys a presumption of validity. To successfully attack the veracity of a facially sufficient affidavit, a defendant must show by a preponderance of the evidence that the affiant made a false statement either `intentionally or with a reckless disregard for the truth.' Reckless disregard means that the affiant had serious doubts about an allegation's truth. Further, even if the affidavit contains false statements made intentionally or recklessly, a warrant based on the affidavit is still valid unless, `with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause ***.'" Id. at ¶ 12 (Internal citations omitted.)
 {¶ 40} In the instant case, Coleman met his burden and proved by affidavits that the search warrants did contain an inaccurate statement regarding the license plates that were on his gold Cadillac Escalade within 72 hours of May 25, 2007, knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the affidavits for the search warrants. The court was required to excise the false material in the affidavits *Page 28 
regarding the license plates on Coleman's Cadillac Escalade and determine whether the remaining information in the affidavits was sufficient to establish probable cause for the issuance of the search warrants.
 {¶ 41} Subsumed in his third assignment of error is Coleman's argument that the trial court erred in failing to have an oral hearing on his motion to disclose the identity of the "so-called source," the confidential informant described by the affiant in the two search warrants. A review of his brief however reveals no mention of this particular motion. As Coleman failed to cite any authority or point to any portion of the record with regard to this aspect of his third assignment of error, pursuant to App. R. 16(A)(7) and App. R. 12(A)(2), we will not address it.
 {¶ 42} We now turn to the issue of whether each affidavit, with the information regarding license plates ECF7159 excised, was in fact sufficient to establish probable cause for their issuance.
 {¶ 43} The applicable law in reviewing sufficiency of evidence to support issuance of a search warrant was set forth by this court inState v. Banna, Cuyahoga App. Nos. 84901 and 89402, 2005-Ohio-2614:
 "In reviewing the sufficiency of the evidence to support issuance of a search warrant, the reviewing court must ascertain whether there was a substantial basis for the issuing judge to conclude that probable cause existed. `After-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's determination of probable cause should be paid *Page 29 great deference by reviewing courts.'" (Internal citations omitted.)
 {¶ 44} For the following reasons, we determine that the affidavit for the Strathmore premises, less the excised portions regarding license plates ECF7159, contained sufficient evidence from which the issuing judge could find that there was a fair probability that contraband would be found. At the outset, the affidavits contained information regarding the reliability of the informant. The affidavit stated that: a confidential informant told affiant that Eddie Coleman drives a gold-colored Cadillac Escalade truck and is selling cocaine from his mother's house on Strathmore. The word "selling" connotes the concept of an ongoing operation of selling cocaine from that location. The confidential informant described a location that can be identified with precision-the first house on Strathmore from Euclid directly behind the Auto Zone. The confidential informant told the affiant that Coleman keeps the cocaine in a small room on the third floor of the house on Strathmore. This statement is also indicative of ongoing drug trafficking. Finally, the confidential informant made a controlled purchase of a substance later determined to be cocaine. This evidence was sufficient to demonstrate to the issuing judge that there was a "fair probability" that contraband or evidence of a crime as described in the affidavit would be found in that location on Strathmore.
 {¶ 45} Coleman also argued at the trial court and on appeal that the affidavit for the Revere premises failed to contain sufficient evidence from which *Page 30 
the issuing judge could find that there was a fair probability that contraband would be found at that location. He argues that the affidavit in support of the Revere search warrant failed to show the required nexus between the items to be seized and the place to be searched.
 {¶ 46} In United States v. Blair (C.A.6, 2000), 214 F.3d 690, 696, the Sixth Circuit Court of Appeals found a search warrant of a defendant's home to be valid, as it found the experienced narcotics agent established in the affidavit sufficient nexus between the drug dealer's home and drug trafficking records.
 {¶ 47} The court stated:
 "The application for the federal search warrant was based on an eleven-page affidavit by Agent Kraft, who had extensive experience in drug-trafficking investigations. Kraft testified that the purpose of the search warrant was `to locate and seize evidence relating to an investigation into violations of Title 18, United States Code Section 1956, Laundering of Monetary Instruments, Title 18, United States Code Section 1957, Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity and Title 21, United States Code Section 841 and 846.' Kraft's affidavit set forth his experience in investigating the financial aspects of drug trafficking and stated that in his experience it was common for drug traffickers to store financial records in their homes. Kraft also provided information obtained about the Blairs from several cooperating witnesses, with statements attesting to their reliability. The cooperating witnesses stated that they had worked as prostitutes for the Blairs and purchased quantities of drugs from them. The affidavit also provided that electric company records for the suspected houses of prostitution listed the subscriber for electric services as Launa Miakowski.
 * * * *Page 31 
 Considering the totality of the circumstances, we find that Kraft's affidavit established probable cause for the issuance of the search warrant. Accordingly, the magistrate judge had a substantial basis to conclude that wrongdoing would be uncovered by the search. The affidavit provided information regarding Kraft's extensive experience in investigating the financial aspects of drug trafficking and his professional opinion that drug traffickers keep financial records at their homes. In addition, the affidavit provided information obtained from reliable cooperating witnesses and electric company records. This information was sufficient for the issuance of the search warrant in this case. See United States v. Jones, (C.A.6, 1998) 159 F.3d 969, 975 (stating that `in the case of drug dealers, evidence is likely to be found where the dealers live')."
 {¶ 48} Mindful of the deference to be given a neutral magistrate's decision that a search warrant sufficiently establishes probable cause, as set forth in George, we find that under the totality of the circumstances, the search warrant for the Revere location, less the excised information relating to license plates ECF7159, sets forth sufficient facts justifying the searches. The Revere search warrant, by referring to various governmental records, including license bureau and real estate records, sufficiently established 1957 Revere to be the current residence of Coleman, and the 1753 Strathmore address to be a former residence of his and owned by his mother, Parlee Coleman, just as indicated by the informant. The affidavit sufficiently establishes him to be a dealer or trafficker of drugs, namely, cocaine. License bureau records show that a gold Cadillac was registered in the name of Eddie Coleman, and the affidavit indicated a gold Cadillac Escalade was seen at both locations. *Page 32 
 {¶ 49} Furthermore, the affidavit sufficiently establishes affiant's extensive experience in investigating drug traffickers, to wit: involvement in over 1,500 arrests for violations of State drug laws, involvement in the execution of over 500 search warrants involving drug law violations, and participation in over 1,000 controlled buys. Based on this foundational experience, the affidavit sufficiently sets forth factors establishing why there was a "fair probability" that contraband or evidence of a drug related crime would be found in that particular place. As cited in Banna at ¶ 24:
 "It is clear that `only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.' Probable cause is measured under a totality of the circumstances test. This test was set forth in Gates, 462 U.S. at 238-39, as follows: `The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" (Internal citations omitted.) (Emphasis in original.) *Page 33 
 {¶ 50} We find the issuing judge's scrutiny before execution of the Revere search warrant, minus the excised portions regarding the misstatement as to the license plates ECF7159 on the gold Cadillac Escalade, resulted in proper judicial determination that the affidavit established a sufficient nexus between Coleman's personal residence on Revere and drug evidence, that is, drugs and drug trafficking records kept by him as a trafficker at his house. This link was established by statements from an affiant-detective describing specialized information based on his substantial experience and training. His statements established concrete reasons why drugs and financial drug trafficking records are often kept in a drug dealer's or trafficker's home. The affidavit went beyond a cursory statement that "drug dealers have contraband and items of evidence of drug trafficking" in their homes, which may or may not be an obvious observation depending on one's experience. Instead, the affiant-detective gave detailed information and explanation as to why individuals involved in drug dealing and trafficking often hide such evidence and contraband at their homes. SeeJones at 975.
STALENESS ISSUE {¶ 51} Coleman also contends that the affidavits in support of the search warrants did not satisfy the probable cause requirement because they were stale. Specifically, he argues that the information regarding the informant's crack cocaine purchase made within 72 days of the signing of the search *Page 34 
warrants and no more than eight days from the execution of the search warrants, cannot support a probable cause determination because they were stale. He questions whether probable cause existed to support a determination that items sought by the search warrants would be present eight days after Coleman's purported sale to the informant of a plastic baggie of suspected cocaine, in an amount he surmised to be "less than 10 grams of cocaine."
 {¶ 52} The court in State v. Bailey, Butler App. No. CA2002-03-057,2003-Ohio-5280, addressed a similar argument that information in a search warrant was stale. In Bailey, two reliable informants provided the police with information indicating appellant was involved in selling drugs from an apartment and that a controlled buy utilizing marked money was conducted at the apartment by the police and the informants. Within 72 hours of the controlled buy, the police applied for, obtained and executed a warrant to search the apartment for cocaine, money, drug records, lock boxes or safes, drug paraphernalia, weapons and any fruits of the crime. The court addressed the "staleness" argument as follows:
 "Appellant's argument that the above information was `stale' in that the drug buy occurred three days prior is without merit. Under these circumstances, where there was ongoing drug activity, we do not find that such a short lapse is substantial. The standard for determining whether probable cause to believe evidence exists in a particular location is `whether, given all the circumstances set forth in the affidavit *** there is a fair probability that contraband or evidence will be found in a particular place.' Gates at 238. The affidavit was based on ongoing criminal activity and we *Page 35 therefore find that there was evidence to support the conclusion that a fair probability existed that contraband and other evidence was located in the apartment. Accord State v. Latham, Coshocton App. No. 01-CA-1, 2001-Ohio-1556." (Emphasis added.)
 {¶ 53} We agree with the following statement of the court in State v.Proffit, Fairfield App. No. 07CA36, 2008-Ohio-2912, at ¶ 20: "Although specific references to dates and times are best, there is no hard and fast rule as to the staleness issue." In Latham it was stated: "We do not find that the lapse of one week is substantial. The standard for determining whether probable cause to believe evidence exists in a particular location is `whether, given all the circumstances set forth in the affidavit *** there is a fair probability that contraband or evidence will be found in a particular place." Id. at ¶ 6, quotingGates at 238.
 {¶ 54} In the instant appeal, the Revere affidavit was also based on "ongoing criminal activity." Further, we do not find that the lapse of eight days is substantial. There was a fair probability that contraband or evidence would be found at the Strathmore and Revere locations in a situation of "ongoing activity."
 {¶ 55} In Proffit, the appellant court reviewed the trial court's determination rejecting a staleness argument based on the use of the verb "has been maintaining" in an affidavit. The court found the affidavit to be sufficient to establish the concept of "ongoing criminal activity." "The trial court found the *Page 36 
affidavit's specific language, appellant `has been maintaining' a relationship with [the detective] who has been posing as a thirteen-year-old girl on the internet, was sufficient to establish `appellant's actions were current and ongoing.'" Proffit at ¶ 18. The court further stated, "[a] reading of the affidavit in toto leads one to the conclusion that appellant's actions were ongoing, and the investigatory contacts were current and related back to appellant's actions under investigation." Proffit at ¶ 22.
 {¶ 56} Although the language of the affidavits in the instant case that "Eddie Coleman who CRI describes as B/M/44 years old/5'5"/175 lbs/brown skin with clean shaven face and cellular phone #216-387-3387 and drives a gold-colored Cadillac Escalade truck is selling cocaine from his mother's house on Strathmore" does not reference specific dates and times as is the better practice, in their totality, minus the excised information, they sufficiently establish the presence of "ongoing criminal activity." The information contained in the affidavits conveying such "ongoing criminal activity" is the ongoing "selling cocaine from his mother's house," coupled with the observed controlled drug buy from Coleman. Given these facts, we find, as did the court inProffit, that the issuance of search warrants in the instant case were not based upon stale information.
 {¶ 57} Coleman's related challenge as to whether the two search warrants were executed in a timely manner is also unfounded. The search warrants were issued on May 25, 2007, a Friday. Monday, May 28, 2007, was a legal holiday, Memorial Day. The search warrants were returned executed on Wednesday, *Page 37 
May 31, 2007, at 8:15 p.m. Crim. R. 41(C) clearly sets forth the time within which a search warrant is to be executed. It states in pertinent part: "The warrant shall be directed to a law enforcement officer. It shall command the officer to search, within three days, the person or place named for the property specified." Crim. R. 45(A) provides as follows regarding computation of time in criminal cases:
 "(A) Time: computation.
 In computing any period of time prescribed or allowed by these rules, by the local rules of any court, by order of court, or by any applicable statute, the date of the act or event from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, Sunday, or legal holiday, in which event the period runs until the end of the next day which is not Saturday, Sunday, or legal holiday. When the period of time prescribed or allowed is less than seven days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in computation."
 {¶ 58} Hence, the search warrants returned executed on Wednesday, May 31, 2007 at 8:15 p.m. were done so in a timely fashion.
CRIM.R. 12(F) {¶ 59} Coleman argues in his fourth assignment of error and throughout other assignments of error, that the trial court erred by not including findings of fact on the record when it denied his motion to suppress search warrants filed September 21, 2007. Coleman contends that Crim. R. 12(F) requires the trial court to state its findings of fact on the record when denying a motion to suppress. Crim. R. 12(F) provides in part that "where factual issues are involved in determining a motion, the court shall state its essential findings on the record." *Page 38 
 {¶ 60} It is clear from the record that, despite request from Coleman's counsel, the trial court did not state its findings of fact on the record when denying the portion of his suppression motion based on the search warrants. The trial court, after deciding not to have an evidentiary hearing, stated that "the motion to suppress that search-based upon the search warrant is denied. With respect to some kind of an illegal arrest argument, I'm going to *** go ahead and set a hearing." The journal entry dated November 20, 2007, and filed November 27, 2007, merely states: "Defendant's motion to suppress search warrant based on search warrant, filed 9-21-07, is denied. Hearing on Defendant's motion to proceed as to arrest and search incident to arrest set for hearing."
 {¶ 61} A hearing was in fact conducted on the illegal arrest portion of the motion to suppress. The court in its findings of fact justifying its denial of the motion to suppress the arrest of Coleman filed January 22, 2008, refers to its ultimate determination "[t]hat at the time of defendant's arrest, members of the Cleveland Police where [sic] executing a valid search warrant."
 {¶ 62} We realize it is a better practice for the trial court to follow the directives of Crim. R. 12(F). However, we are aware that the absence of findings of fact and conclusions of law is not fatal in a review of search warrants as "[t]he validity of a search warrant must be determined solely from the contents of the affidavit. State v.Smith (1997), Cuyahoga App. No. 70855, citing State v. *Page 39 Yanowitz (1980), 67 Ohio App.2d 141, 144 ***. A reviewing court may draw reasonable, common-sense inferences from the facts alleged in the affidavit. State v. Bean (1983), 13 Ohio App.3d 69, 72 ***." State v.Casalicchio, Cuyahoga App. No. 79431, 2002-Ohio-587, at 11.
 {¶ 63} Given the trial court was reviewing the four corners of the search warrants with material regarding license plates ECF7159 on the gold Cadillac Escalade excised, we are able to determine, as did the court in Casalicchio, that the record, albeit devoid of the trial court's findings, is sufficient to allow a full review of Coleman's claim on appeal regarding his motion to suppress and denial of motion for return of seized property. See State v. Robinson, Cuyahoga App. No. 55580, 2008-Ohio-5580, citing Casalicchio. See, also, State v.Martin, Cuyahoga App. No. 89030, 2007-Ohio-6062, where this court was also faced with a lack of Crim. R. 12(F) findings of fact, stated: "Moreover, this court is able to determine, from the transcript of the suppression hearing, the correctness of the trial court's suppression ruling." Martin at ¶ 13, citing State v. Harris, 8th Dist. No. 85270,2005-Ohio-2192.
 {¶ 64} Accordingly, for the foregoing reasons, Coleman's first, third, and fourth assignments of error are overruled.
 {¶ 65} Coleman's second and fifth assignments of error will be addressed together as they are variations on his argument that items of his personal property were improperly seized. *Page 40 
ASSIGNMENT OF ERROR II.
 "THE COURT ERRED BY INFERENTIALLY FINDING (IF IT DID) THE SEIZURES MADE HERE OF NON-CONTRABAND PROPERTY (OSTENSIBLY AS EVIDENCE) WAS JUSTIFIED BY PROBABLE CAUSE TO BELIEVE SUCH PROPERTY COULD BE RELATED TO THE ONLY CRIMINAL OFFENSE ALLEGED IN THE AFFIDAVITS — ONE SOLITARY DRUG SALE."
ASSIGNMENT OF ERROR V.
 "LACKING ANY FACTUAL AND LEGAL DETERMINATIONS, AND GIVEN AN ACCUSED DOES NOT HAVE THE BURDEN OF DISPROVING THE LAWFULNESS OF THE SEIZURES OF HIS PERSONAL PROPERTY FROM HIM — OSTENSIBLY AS EVIDENCE IT FOLLOWS THE COURT ERRED WHEN IT REFUSED TO ORDER ALL NON-CONTRABAND PROPERTY (SEIZED AS EVIDENCE) RETURNED TO APPELLANT."
 {¶ 66} Interlaced in these two assignments of error are various arguments that are indirect attempts to attack the trial court's determination that the search warrants, minus the excised portion regarding license plates, ECF7159, on the gold Cadillac Escalade, were sufficient to establish probable cause to believe that the items described on the first page of each search warrant would be found at the respective premises. We have addressed these issues with regard to other assignments of error, and have determined that probable cause was demonstrated warranting seizure of the property listed in the search warrants.
 {¶ 67} However, other arguments in these two assignments of error, albeit circuitously, raise the issue as to the right of the State to hold what is alleged by *Page 41 
the State to be contraband property seized as a part of this prosecution after conviction. At the time the trial court denied the motion to suppress and the return of seized property, it had determined, prior to trial and conviction, that there was a "fair probability" that the items seized pursuant to the search warrants would be found at the two locations. However, as explained further herein, by operation of a new statute effective July 1, 2007, the filing of a motion to suppress by Coleman placed into issue the ultimate determination as to whether forfeiture of contraband property was warranted.
 {¶ 68} At first glance, the determination as to the ultimate right to possession of items seized as contraband in the instant matter appears to be raised by virtue of the forfeiture petition filed by the State under R.C. 2933.43 on the same date it filed the indictment against Coleman.
 {¶ 69} However, as explained by this court in State v. Rosa, Cuyahoga App. No. 90921, 2008-Ohio-5267, at fn. 1:
 "The statute was repealed effective July 1, 2007. For forfeiture of contraband, see now R.C. 2981.01 et seq. The legislation accompanying R.C. 2981.01 to 2981.14, Section 4 of 2006 H 241 specifically provides as follows: `Sections 1, 2, and 3 of this act shall take effect on July 1, 2007. If a criminal or civil forfeiture action relating to misconduct under Title XXIX of the Revised Code was or is commenced before July *Page 42 1,2007, and is still pending on that date, the court in which the case is pending shall, to the extent practical, apply the provisions of Chapter 2981 of the Revised Code in the case.' See State v. Clark, 173 Ohio App.3d 719, 2007-Ohio-6235, 880 N.E.2d 150."
 {¶ 70} Given this matter was filed after July 1, 2007, the trial court to the extent practical was required to apply the provisions of Chapter 2981 of the Revised Code in this case.
 {¶ 71} R.C. 2981.03(A)(4) provides in pertinent part:
 "A person aggrieved by an alleged unlawful seizure of property may seek relief from the seizure by filing a motion in the appropriate court that shows the person's interest in the property, states why the seizure was unlawful, and requests the property's return. If the motion is filed before an indictment, information, or a complaint seeking forfeiture of the property is filed, the court shall promptly schedule a hearing on the motion, and at the hearing the person shall demonstrate by a preponderance of the evidence that the seizure was unlawful and that the person is entitled to the property. If the motion is filed by a defendant after an indictment, information, or a complaint seeking forfeiture of the property has been filed, the court shall treat the motion as a motion to suppress evidence. If the motion is filed by a third party after an indictment, information, or complaint seeking forfeiture of the property has been filed, the court shall treat the motion as a petition of a person with an alleged interest in the subject property, pursuant to divisions (E) and (F) of section 2981.04 of the Revised Code." (Emphasis added.)
 {¶ 72} A review of the record discloses that the trial court did treat Coleman's request for return of seized property encompassed in his motion to *Page 43 
suppress and for return of seized property filed September 21, 2007, as a motion to suppress, and denied same. The question before us is whether the trial court, in summarily denying the motion to suppress and for the return of seized property, properly followed the procedures set forth in the now applicable Chapter 2981 as to disposition of seized property upon conviction.
 {¶ 73} In Clark, supra, the court also noted the repeal of R.C. 2933.43, and stated: "Like former R.C. 2933.41 (repealed), the provisions of R.C. 2981.01 through R.C. 2981.14 (which replaced former R.C. 2933.41) also preclude the return of property used in the commission of certain offenses under certain conditions."
 {¶ 74} It also stated:
 "[I]n Ohio forfeitures are typically not favored in law or equity. State v. Johns (1993), 90 Ohio App.3d 456, 459, 629 N.E.2d 1069 citing State v. Lilliock (1982), 70 Ohio St.2d 23, 25, 434 N.E.2d 723. `Whenever possible, such statutes must be construed as to avoid a forfeiture of property.' Lilliock, 70 Ohio St.2d at 26. The Supreme Court of Ohio has cautioned that forfeiture may not be ordered `unless the expression of the law is clear and the intent of the legislature manifest.' Id., see, also, City of Dayton v. Boddie (1984), 19 Ohio App.3d 210 ***. A forfeiture action, while instituted as a criminal penalty, is a civil proceeding. State v. Roberts (1995), 102 Ohio App.3d 514, 518, 657 N.E.2d 547 citing State v. Casalicchio ***. Accordingly, due process requires that proceedings seeking a disposition of property in forfeiture comply with the Rules of Civil Procedure. State v. Gaines (1990), 64 Ohio App.3d 230, 236 ***." Clark at ¶ 8.
 {¶ 75} R.C. 2981.04
Criminal forfeiture states in pertinent part:
 (A)(1) Property described in division (A) of section 2981.02 of the Revised Code may be forfeited under this section only if the complaint, indictment, or information charging the offense or municipal violation, or the complaint charging the delinquent act, contains a specification of the type described in section 2941.1417 [2941.14.17] of the Revised Code that sets forth all of the following to the extent it is reasonably known at the time of the filing:
 (a) The nature and extent of the alleged offender's or delinquent child's interest in the property;
 (b) A description of the property;
 (c) If the property is alleged to be an instrumentality, the alleged use or intended use of the property in the commission or facilitation of the offense.
 (2) If any property is not reasonably foreseen to be subject to forfeiture at the time of filing the indictment, information, or complaint, the trier of fact still may return a verdict of *Page 45 
forfeiture concerning that property in the hearing described in division (B) of this section if the prosecutor, upon discovering the property to be subject to forfeiture, gave prompt notice of this fact to the alleged offender or delinquent child under Criminal Rule 7(E) or Juvenile Rule 10(B).
 (3) For good cause shown, the court may consider issues of the guilt of the alleged offender or the delinquency of the alleged delinquent child separate from whether property specified as subject to forfeiture should be forfeited.
 (B) If a person pleads guilty to or is convicted of an offense or is adjudicated a delinquent child for committing a delinquent act and the complaint, indictment, or information charging the offense or act contains a specification covering property subject to forfeiture under section 2981.02 of the Revised Code, the trier of fact shall determine whether the person's property shall be forfeited. If the state or political subdivision proves by a preponderance of the evidence that the property is in whole or part subject to forfeiture under section 2981.02 of the Revised Code, after a proportionality review under section 2981.09 of the Revised Code when relevant, the trier of fact shall return a verdict of forfeiture that specifically describes the extent of the property subject to forfeiture. If the trier of fact is a jury, on the offender's or delinquent child's motion, the court shall make the determination of whether the property shall be forfeited. (Emphasis added.)
 {¶ 76} In the instant case, we are mindful that the provisions of Chapter 2981 must be strictly construed. Here, the indictment charging the offenses contained no specification covering property subject to forfeiture under section 2981.02 of the Revised Code. Given this deficiency, the trial court has no authority to order any property listed in the State's petition forfeited. Therefore, said property is ordered returned to Coleman. *Page 46 
 {¶ 77} We note that, even if the petition for forfeiture of seized contraband to seizing law enforcement agency filed August 16, 2007 had been filed prior to the effective date of July 1, 2007, under the strict compliance mandated by the procedural requirements of now repealed R.C. 2933.43, the State would not have been successful. This court held inRosa ¶ 4, that given the fact that the petition for forfeiture filed by the State contained a certificate of service that was not dated, and there was no evidence beyond assertions that Rosa was given notice of the forfeiture proceedings by personal service or by certified mail in compliance with the statutory requirements, the forfeiture was inappropriate.
 {¶ 78} Therefore, the trial court would be compelled by specific language in the pertinent R.C. 2981 to deny the State's forfeiture petition and to grant Coleman's request for the return of seized property listed in said petition after his conviction. The State's motion for forfeiture cannot be granted. Therefore, we order the following items described in the list of property attached to the State's petition of August 16, 2007, returned to Coleman: (1) $650 in U.S. currency, (2) $950 in U.S. currency, (3) $4,930 in U.S. currency, (4) $10,645 in U.S. currency, (no. 5 listed), (6) $2,306 in U.S. currency, (7) box of bullets, (8) Nextel cell phone, (9) pro scale, (10) digital scale, (11) 2003 GMC Sierra, (12) 1988 Mercedes 300E, and (13) 1995 Chevrolet Lumina.
 {¶ 79} Coleman's second assignment of error is denied. However, for the foregoing reasons Coleman's fifth assignment of error is denied in part and *Page 47 
granted in part, and the State is ordered to return the above listed property to appellant.
 {¶ 80} Judgment is affirmed in part, reversed in part, and case is remanded for further proceedings consistent with this opinion.
It is ordered that appellee and appellant share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, A.J., CONCURS
CHRISTINE T. MCMONAGLE, J., CONCURRING IN PART AND DISSENTING IN PART (SEE SEPARATE DISSENTING OPINION).
[1] Franks v. Delaware (1978), 438 U.S. 154, 98 S.Ct. 2674. State v.Parr, Williams App. No. WM-07-007, 2008-Ohio-979, describes aFranks hearing as an evidentiary hearing "`[w]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, theFourth Amendment requires that a hearing be held at the defendant's request.' This standard was adopted by the Ohio Supreme Court in State v.Roberts (1980), 62 Ohio St.2d 170, 177." Parr at ¶ 15, quotingFranks at 155-156.
[2] In our review, and further explained herein, the underlined portions have been excised from the search warrants in determining probable cause.